1  *Charlotte G. Carne*
   *charlotte@pabilaw.org*
2  *Attorney for Plaintiffs*
   *Cal. Bar No. 198831*
3  *Brain Injury Rights Group*
   *300 East 95th Street, Suite 130*
4  *New York, New York, 10128*
   *(646) 850-5035*
5

6               UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
7                    WESTERN DIVISION

8

9  **JANINE ANGEL,**                              )
   on behalf of **C.A.,** and individually,       )
10                                                )
   **TAMARA LOWDER**,                             )
11 on behalf of **D.R.**, and individually,       )
                                                  )
12 **MICHAEL MARTIN**,                            )
   on behalf of **D.M.**, and individually,       )
13 **SHUSHANIK KHACHATURIAN**                     )
                                                  )
14 on behalf of **D.N.**, and individually,       )
   **ERIN BEBEREIA**,                             )
15 on behalf of **L.B** and **D.B**, and          )
   individually,                                  )
16                                                )
   **LEANNA WASCO,**                              )
17 on behalf of **E.W.,** and individually,       )
18 **JESSICA GRANADOS,**                          )
   on behalf of **E.G.,** and individually,       )
19 **DANA WEST,**                                 )
20 on behalf of **I.W**., and individually,       )
   **HANNAH BELL,**                               )
21 on behalf of **J.B**., and individually,       )
22 **JESSE W. MCFADDIN** on behalf of             )
   **J.D.M.** and individually,                   )
23 **MICHELE FLORENTZ**,                          )
24 on behalf of **K.F.,** and individually,       )
   **KERRY SARNER,**                              )
25 on behalf of **L.S.,** and individually,       )
26 **YVONNE CHAVEZ LOMBARDI**, on                 )

27 FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

                          1

| | | |
|---|---|---|
| 1 | behalf of **L.L.,** and individually, | ) |
| 2 | **MICHELLE RADICH**, on behalf of **M.R.,** and individually, | ) ) |
| 3 | **MIRANDA KECK**, on behalf of **R.K.**, and individually, | ) ) |
| 4 | **TINA GUNN**, on behalf of **S.G.** and individually, | ) ) |
| 5 | | ) |
| 6 | **MEGAN MEIER**, on behalf of **S.M.**, and individually, and on behalf of all | ) ) |
| 7 | others similarly situated, | ) |
| 8 | Plaintiffs, | ) |

Docket No. 2:21-cv-07333-ODW-PVC

v.

Hon. Otis D. Wright, II
Magistrate Judge Pedro V. Castillo

**CINDY MARTEN**, in her official capacity as former Superintendent,

**GAVIN NEWSOM,** in his official capacity as Governor,
**TONY THURMOND**, in his official capacity as Superintednet,
**CHRISS ESSMAN**, in his official capacity as Superintendent,
**ANDREW G. ALVARADO**, in his official capacity as Superintendent,
**MARK W. MCLAUGHLIN, Ed.D**, in his official capacity as Superintendent,
**AUSTIN BEUTNER**, in his official capacity as Superintendent,
**ROBERT HALEY**, in his official capacity as Superintendent,
**LUCILLE LYNCH**, in her official capacity
**DR. MARIAN KIM-PHELPS**, in her official capacity,

FIRST AMENDED PROPOSED CLASS ACTION COMPLAINT AND REQUEST FOR AUTOMATIC AND PRELIMINARY INJUNCTION

DEMAND FOR JURY TRIAL

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

2

**DAVID OLNEY**, in his official )
capacity as Superintendent, )
**DR. ROXANE FUENTES**, in her )
official capacity as Superintendent, )
**KIRSTEN M. VITAL BRULTE**, in )
her official capacity as Superintendent, )
**KENT KERN**, in his official capacity )
as Superintendent, )
**MATT HILL**, in his official capacity as )
Superintendent, )
**MATTHEW GULBRANDSEN**, in his )
official capacity as Superintendent, )
**KELLEY DEXTRAZE**, in her official )
capacity as Superintendent, )
**TROY A. BROWN**, in his official )
capacity as Superintendent, )
**LAMONT JACKSON**, in his official )
capacity as Superintendent, )
**PATRICK KELLY**, in his official )
capacity as Superintendent, )
**BRIAN MCDONALD, Ed.D.,** in his )
official capacity as Superintendent, D, )
**NORM ENFIELD**, in his official )
capacity as Superintendent, )
**DOUG KIMBERLY**, in his official )
capacity as Superintendent, )
**CALIFORNIA DEPARMENT OF** )
**EDUCATION,** )
**FRESNO CENTRAL UNIFIED** )
**SCHOOL DISTRICT,** )
**CONEJO VALLEY UNIFIED** )
**SCHOOL DISTRICT,** )
**LOS ANGELES UNIFIED SCHOOL** )
**DISTRICT,** )
**SAN DIEGUITO UNION HIGH** )
**SCHOOL DISTRICT,** )
**POWAY UNIFIED SCHOOL** )
**DISTRICT,** )

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

3

| | |
|---|---|
| **HESPERIA UNIFIED SCHOOL DISTRICT,** | ) |
| **BERRYESSA UNION SCHOOL DISTRICT,** | ) |
| **CAPISTRANO UNIFIED SCHOOL DISTRICT,** | ) |
| **SAN JUAN UNIFIED SCHOOL DISTRICT,** | ) |
| **BURBANK UNIFIED SCHOOL DISTRICT,** | ) |
| **LIVE OAK UNIFIED SCHOOL DISTRICT,** | ) |
| **LINCOLN UNIFIED SCHOOL DISTRICT,** | ) |
| **SAN JOAQUIN COUNTY OFFICE OF EDUCATION,** | ) |
| **SAN DIEGO UNIFIED SCHOOL DISTRICT,** | ) |
| **MURRIETTA VALLEY UNIFIED SCHOOL DISTRICT,** | ) |
| **PASADENA UNIFIED SCHOOL DISTRICT,** | ) |
| **CHINO UNIFIED SCHOOL DISTRICT,** | ) |
| **LAKE ELSINORE UNIFIED SCHOOL DISTRICT,** | ) |
| Defendants. | ) |

---

Plaintiffs, Maria Alvarez Garcia, Marina Rizzo, Janine Angel, Tamara Lowder, Michael Martin, Shushanik Khachaturian, Erin Bebereia, Leanna Wasco, Jessica Granados, Dana West, Hannah Bell, Jesse W. McFaddin, Michele Florentz, Kerry Sarner, Yvonne Chavez-Lombardi, Michelle Radich, Miranda Keck, Tina Gunn and Megan Meier, individually and on behalf of their special needs children

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

4

(collectively referred to as "Plaintiffs"), for their Proposed Class Action Complaint and Request for Automatic and Preliminary Injunction against the California Department of Education ("CDE"), the Fresno Central Unified School District ("FCUSD"), the Conejo Valley Unified School District ("CVUSD"), the Los Angeles Unified School District ("LAUSD"), the San Dieguito Union High School District ("SDUHSD"), the Poway Unified School District ("PUSD"), the Hesperia Unified School District ("HUSD"), the Berryessa Union School District ("BUSD"), the Capistrano School District ("CSD"), the San Juan Unified School District ("SJUSD"), the Burbank  Unified School District ("BSD"), the Live Oak School District ("LOSD"), the Lincoln Unified School District ("LUSD"), the San Joaquin County Office of Education ("SJCE"), the San Diego Unified School District ("SDUSD"), the Murrieta Valley Unified School District ("MVUSD"), the Pasadena Unified School District ("PSD"), the Chino Valley Unified School District ("CUSD"), the Lake Elsinore Unified School District ("LEUSD")  (collectively, the "School District Defendants" or "Named LEAs") and other similarly situated local education agencies (herein as "LEAs") in California, and Governor Gavin Newsom, Tony Thurmond, Chris Essman, Andrew G. Alvarado, Mark W. McLaughlin, Austin Beutner, Robert Haley, Lucille Lynch, Dr. Marian Kim-Phelps, Dr. Roxane Fuentes, Kirsten M. Vital Brulte, Kent Kern, Matt Hill, Matthew Gulbrandsen, Kelly

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

5

Dextraze, Troy A. Brown, Dr. Lamont A. Jackson, Cindy Marten, Patrick Kelly, Dr. Brian McDonald, Norm Enfield, and Doug Kimberly, in their official capacities ("Individual Defendants") allege as follows:

<u>PRELIMINARY STATEMENT</u>

1. This action is brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, *et seq.* ("IDEA"), the California Education Code, § 56000 *et seq.* ("CEC"), Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; 28 C.F.R. § 35.104, 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment, the Racketeer Influenced and Corrupt Organizations ("RICO") Act of 1970, 28 U.S.C. §§ 1961-1968 and the concomitant implementing regulations, case law and public policy.

2. Plaintiffs are children with disabilities and the parents of those children, who were denied their rights under IDEA, the California Education Code, the ADA, § 504, the Equal Protection Clause of the Fourteenth Amendment, and RICO for the 2019-2020, 2020-2021 and 2021-2022 school years by Defendants. Plaintiffs seek declaratory and injunctive relief to enjoin defendants from violating their procedural and substantive rights under IDEA, the California

Education Code, the ADA, § 504, the Equal Protection Clause of the Fourteenth Amendment, and RICO. Specifically, Plaintiffs seek a judgment declaring that the class members' unilateral change of educational placement for more than ten days cumulatively in the 2019-2020 and 2020-2021 school years respectively triggered the IDEA's stay-put provision that required return to Plaintiffs' status quo, in-person instruction and services; and that Defendants herein violated the procedural safeguards of IDEA and discriminated against plaintiffs under IDEA, the Cal. Educ. Code, § 504, the ADA, and § 1983. Plaintiffs also seek an injunction to prevent Governor Newsom, CDE, the named LEAs, and other similarly situated LEAs from repeating this conduct; specifically, unilaterally changing the Plaintiffs' educational placement for more than 10-days in the 2021-2022 school year and beyond, in the event of any future school closures without further Order of this Court or otherwise.

## JURISDICTION AND VENUE

3.    Jurisdiction of the United States District Court for the Central District of California is invoked under 20 U.S.C. § 1415(i)(2), providing for jurisdiction and a right of action in this Court for parties aggrieved under IDEA.

4.    Jurisdiction of the United States District Court for the Central District of

FIRST AMENDED COMPLAINT                                CASE NO. 21-7333

California is also invoked under Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; 28 C.F.R. § 35.104.

5.   Jurisdiction is also invoked under 42 U.S.C. § 1983.

6.   Jurisdiction is also invoked under the Racketeer Influenced and Corrupt Organizations Act of 1970 pursuant to 28 U.S.C. §§ 1961-1968 of RICO, in particular18 U.S.C. § 1964.

7.   Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

8.   This Court may also order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9.   The Court also has pendent jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. § 1367.

10.  Venue is proper in the United States District Court for the Southern District of California, as authorized by 28 U.S.C. § 1391.

11.  Plaintiffs have not exhausted their administrative remedies under 20 U.S.C. § 1415(i)(2) because they fall within the exceptions to 20 U.S.C. §1415(i)(2),

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

including 20 § U.S.C. 1415(j).

## THE PARTIES

12. Plaintiff A.C. was sixteen years old in March of 2020 when Fresno Central Unified School District ("FCUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 1**, 3/30/20 A.C. IEP.

13. Plaintiff Maria Alvarez Garcia is the parent and legal guardian of A.C.

14. Plaintiff A.R. was sixteen years old in March of 2020 when Conejo Valley Unified School District ("CVUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 2**, 11/15/19 A.R. IEP.

15. Plaintiff Marina Rizzo is the parent and legal guardian of A.R.

16. Plaintiff C.A. was nine years old in March of 2020 when Los Angeles Unified School District ("LAUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 3**, 9/13/19 C.A. IEP.

17. Plaintiff Janine Angel is the parent and legal guardian of C.A.

18. Plaintiff D.R. was eighteen years old in March of 2020 when San Dieguito Union High School District ("SDUHD") and the Poway Unified School District

FIRST AMENDED COMPLAINT                                        CASE NO. 21-7333

9

("PUSD") closed due to the COVID-19 pandemic, and therefore eligible for special education under IDEA. **Exhibit 4**, 10/22/19 D.R. IEP

19. Plaintiff Tamara Lowder is the parent and legal guardian of D.R.

20. Plaintiff D.M. was eighteen years old in March of 2020 when Hesperia Unified School District ("HUSD") closed due to the COVID-19 pandemic, and therefore eligible for special education under IDEA. **Exhibit 5**, 3/4/20 D.M. IEP.

21. Plaintiff Michael Martin is the parent and legal guardian of D.M.

22. Plaintiff D.N. was five years old in March of 2020 when Berryessa Union Elementary School District ("BUESD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 6**, 1/14/20 D.N. IEP.

23. Plaintiff Shushanik Khachaturian is the parent and legal guardian of D.N.

24. Plaintiff L.B. was eight years old in March of 2020 when Capistrano Unified School District ("CUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 7**, 12/13/19 L.B. IEP.

25. Plaintiff D.B. was eight years old in March of 2020 when Capistrano Unified School District ("CUSD") closed due to the COVID-19 pandemic, and

therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 8**, 2/6/20 D.B. IEP.

26. Plaintiff Erin Bebereia is the parent and legal guardian of L.B. and D.B.

27. Plaintiff E.W. was four years old in March of 2020 when San Juan Unified School District ("SJUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 9**, 10/31/19 E.W. IEP.

28. Plaintiff Leanna Wasco is the parent and legal guardian of E.W.

29. Plaintiff E.G. was four years old in March of 2020 when Burbank Unified School District ("BUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 10**, 10/31/19, E.G. IEP.

30. Plaintiff Jessica Granados is the parent and legal guardian of E.G.

31. Plaintiff I.W. was seven years old in March of 2020 when Live Oak School District ("LOSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 11**, 4/15/19 I.W. IEP.

32. Plaintiff Dana West is the legal guardian of I.W.

33. Plaintiff J.B. was four years old in March of 2020 when Lincoln Unified School

District ("LUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 12**, 11/5/19 J.B. IEP.

34. Plaintiff Hannah Bell is the parent and legal guardian of J.B.

35. Plaintiff J.D.M. was sixteen years old in March of 2020 when San Diego Unified School District ("SDUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 13**, 2/13/20 J.D.M. IEP.

36. Plaintiff Jesse W. McFaddin is the parent and legal guardian of J.D.M.

37. Plaintiff K.F. was twelve years old in March of 2020 when San Juan Unified School District ("SJUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 14**, 10/30/19 K.F. IEP.

38. Plaintiff Michele Florentz is the parent and legal guardian of K.F.

39. Plaintiff L.S. was thirteen years old in March of 2020 when Murrieta Valley Unified School District ("MVUSD") closed due to the pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 15**, 1/27/20 L.S. IEP.

40. Plaintiff Kerry Sarner is the parent and legal guardian of L.S.

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

41. Plaintiff L.L. was eight years old in March of 2020 when Pasadena Unified School District ("PUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 16**, 1/7/20 L.L. IEP.

42. Plaintiff Yvonne Chavez Lombardi is the parent and legal guardian of L.L.

43. Plaintiff M.R. was six years old in March of 2020 when Los Angeles Unified School District ("LAUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 17**, 10/3/19 M.R. IEP.

44. Plaintiff Michelle Radich is the parent and legal guardian of M.R.

45. Plaintiff R.K. was seven years old in March of 2020 when Chino Valley Unified School District ("CVUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 18**, 10/16/19 R.K. IEP.

46. Plaintiff Miranda Keck is the parent and legal guardian of R.K.

47. Plaintiff S.G. was seventeen years old in March of 2020 when Lake Elsinore Unified School District("LEUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 19**, 10/17/19 S.G. IEP.

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

48. Plaintiff Tina Gunn is the parent and legal guardian of S.G.

49. Plaintiff S.M. was eleven years old in March of 2020 when Lake Elsinore Unified School District("LEUSD") closed due to the COVID-19 pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 20**, 3/4/20 S.M. IEP.

50. Plaintiff Megan Meier is the parent and natural guardian of S.M.

51. The Fresno Central Unified School District has its principal place of business in Fresno, California.

52. The Conejo Valley Unified School District has its principal place of business in Thousand Oaks, California.

53. The Los Angeles Unified School District has its principal place of business in Los Angeles, California.

54. The San Dieguito Union High School District has its principal place of business in Encinitas, California.

55. The Poway Unified School District has its principal place of business in San Diego, California.

56. The Hesperia Unified School District has its principal place of business in Hesperia, California.

57. The Berryessa Union School District has its principal place of business in

Berryessa, California.

58.   The Capistrano Unified School District has its principal place of business in San Juan Capistrano, California.

59.   The San Juan Unified School District has its principal place of business in Carmichael, California.

60.   The Burbank Unified School District is in Burbank, California.

61.   The Live Oak School District is in Santa Cruz, California.

62.   The Lincoln Unified School District is in Stockton, California.

63.   The San Joaquin County Office of Education, which operates the autism program for Lincoln Unified School District, is in Stockton, California.

64.   The San Diego Unified School District is in San Diego, California.

65.   The Murrieta Unified School District is in Murrieta, California.

66.   The Pasadena Unified School District is in Pasadena, California.

67.   The Chino Valley Unified School District is in Chino, California.

68.   The Lake Elsinore Unified School District is in Lake Elsinore, California.

69.   The California Department of Education is headquartered in Sacramento, California, and has locations throughout the state of California with its southern liaison in Los Angeles, California.

70.   Named Plaintiffs are children with disabilities, and their parents, as defined by

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

20 U.S.C. § 1401(3), and are entitled to receive a free and appropriate public education ("FAPE") and related services from the CDE and Named LEAs. **Exhibits 1-20.**

71. Defendant Gavin Newsom maintains an office located at 1303 10th Street, Suite 1173, Sacramento, California, and is responsible for the oversight and management of the State of California

72. Tony Thurmond is the Superintendent of the California Department of Education.

73. Chris Essman works on California's IDEA Part B application for the California Department of Education.  **Exhibits 25** and **27**.

74. Andrew G. Alvarado is the Superintendent of the Fresno Central Unified School District.

75. Mark W. McLaughlin, Ed. D., is the Superintendent of the Conejo Valley Unified School District.

76. Austin Beutner is the Superintendent of the Los Angeles Unified School District.

77. Lucille Lynch is the Superintendent of the San Dieguito Union High School District.

78. Dr. Roxanne Fuentes is the Superintendent of the Hesperia Unified School

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

District.

79. Kirsten M. Vital Brulte is the Superintendent of the Berryessa Union School District.

80. Kent Kern is the Superintendent of the San Juan Unified School District.

81. Matt Hill is the Superintendent of the Burbank Unified School District.

82. Matthew Gulbrandsen is the Superintendent of the Live Oak School District.

83. Kelly Dextraze is the Superintendent of the Lincoln Unified School District.

84. Troy A. Brown is the Superintendent of the San Joaquin County Office of Education.

85. Dr. Lamont A. Jackson is the Superintendent of the San Diego Unified School District.

86. Cindy Marten is the former Superintendent of the San Diego Unified School District. She held this position during the 2019-2020 and 2020-2021 school years until she stepped down to become the Deputy Secretary of the U.S. Department of Education in 2021. She was confirmed on May 11, 2021.

87. Patrick Kelly is the Superintendent of the Murrieta Valley Unified School District.

88. Dr. Brian McDonald is the Superintendent of the Pasadena Unified School District.

89. Norm Enfield is the Superintendent of the Chino Valley Unified School District.

90. Doug Kimberly is the Superintendent of the Lake Elsinore Unified School District.

91. At all relevant times, plaintiffs resided and continue to reside in California. *Id.*

92. The student plaintiffs are not expressly named within this complaint because of privacy provisions in IDEA as well as the Family Education Rights Privacy Act ("FERPA"), 20 U.S.C. §1232.

93. Defendant California Department of Education is, and was at all material times, a state educational agency ("SEA") that manages and controls the educational affairs of California public schools.

94. The Named LEAs are the local education authorities ("LEAs") defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28 responsible for providing plaintiffs with a FAPE.

95. The State of California and the CDE have established policies and procedures, both written and informal, concerning the implementation of IDEA.

96. The CDE receives funding pursuant to IDEA, 20 U.S.C. § 1412, the ADA, and § 504, and therefore must comply with the statutes' provisions.

97. Plaintiffs reside in defendants' school districts. **Exhibits 1-20**.

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

98. The CDE is responsible for ensuring all Named LEAs provide a FAPE to all California students with disabilities pursuant to statutory rights arising under IDEA, the Cal. Educ. Code, the ADA, § 504, §1983, and their implementing regulations.

## FACTUAL ALLEGATIONS

99. Plaintiffs bring this action under IDEA, the Cal. Educ. Code, the ADA, § 504, § 1983, and RICO seeking declaratory and injunctive relief to enjoin Defendant Governor Newsom, CDE, and the Named LEAs, and other similarly situated LEAs, from violating their procedural and substantive rights under IDEA, the Cal. Educ. Code, the ADA § 504, § 1983, and RICO.

100. The primary mechanism for insuring implementation of IDEA's mandate of a FAPE is the Individualized Education Plan ("IEP"), as defined by 20 U.S.C. §§1401 (14), 1414(d).

101. An IEP is a written statement, prepared for every child with a disability, that sets forth the special education and related services, supplementary aids and services, and program modifications or supports to be provided to the child, or on behalf of the child, to enable that child to achieve a comprehensive set of annual goals and short-term objectives.

102. In response to the COVID-19 pandemic, the United States Department of

Education ("U.S. DOE") published two guidance documents to school districts in March of 2020:  a Supplemental Fact Sheet and a Questions and Answers document.  **Exhibit 21**, March 12, 2020, Supplemental Fact Sheet; **Exhibit 22**, March 2020 Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak.

103. The Fact Sheet stated: "To be clear:  ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (§ 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction." **Exhibit 21.**

104. The Questions and Answers sheet stated that each school would have to "make an individualized determination whether and to what extent compensatory services may be needed, consistent with applicable requirements, including to make up for any skills that may have been lost." **Exhibit 22.**

104. The U.S. DOE did not provide any waivers of IDEA to any state.  **Exhibits 21 and 22.**

105. On March 4, 2020, Defendant Newsom issued Executive Order N-26-20, which allowed LEAs to continue receiving funding, despite the physical closure of the schools, including funding under IDEA Part B.

FIRST AMENDED COMPLAINT                                           CASE NO. 21-7333

106. Also, in this Executive Order, Defendant Newsom called upon the CDE and the California Health and Human Services Agency to issue guidance "ensuring students with disabilities receive a free and appropriate public education consistent with their individualized education program and meeting other procedural requirements under the [IDEA] and California law."

107. Despite this, Defendant Newsom failed to ensure that his Executive Order was being implemented and subsequently assisted in enriching the Defendants within the State while students with disabilities were, and continue to be, deprived of a free and appropriate public education.

108. On March 13, 2020, the California Department of Education issued guidance on ensuring a FAPE under IDEA.  **Exhibit 23**, March 13, 2020 Letter.

109. The letter referred plaintiffs to the U.S. DOE's March 2020 "Questions and Answers" document and further stated:  "Many questions about structuring special education and related services for students with disabilities have yet to be answered as we navigate this unprecedented response to COVID-19.  LEAs are encouraged to work collaboratively and creatively to provide instruction and services in an equitable manner for all students."  **Exhibit 23**.

110. On July 17, 2020, the California Department of Public Health issued a "COVID-19 Update Guidance:  Child Care Programs and Providers.  **Exhibit**

FIRST AMENDED COMPLAINT

CASE NO. 21-7333

**24**, COVID-19 Update Guidance: Child Care Programs and Providers.

111. This July 17, 2020, guidance did not address the reopening of schools. *Id*.

112. In 2019, the U.S. DOE gave California $1,289,886,774.00 in IDEA Part B Funds. **Exhibit 25**, July 1, 2020 Letter from U.S. DOE to Tony Thurmond enclosing the Department of Education Funds for States Formula.

113. In 2020, the U.S. DOE gave California an estimated $1,327,800,000.00 in IDEA Part B Funds. **Exhibit 25**

114. In 2021, the U.S. DOE gave California $1,336,802,576.00 in IDEA Part B Funds. **Exhibit 25**

115. To receive these funds, the CDE made assurances to the United States Department of Education regarding its "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 26**, 2019 IDEA Part B Application; **Exhibit 27**, California's 2019 State Application Memo by Chris Essman; **Exhibit 28**, 2020 IDEA Part B Application; **Exhibit 29**, California's 2020 State Application Memo by Chriss Essman.

116. The CDE assured the U.S. DOE that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§

300.121." **Exhibits 26-29**.

117. The CDE assured the U.S. DOE that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." **Exhibits 26-29.**

<u>A.C.</u>

118. A.C. is eligible for special education from Fresno Central Unified School District ("FCUSD") due to an intellectual disability and orthopedic impairment. **Exhibit 1**.

119. As a result of A.C.'s intellectual disability, speech-language impairment, and orthopedic impairment, A.C. has global developmental impairments that adversely affect his educational abilities and performance. **Exhibit 1.**

120. A.C. struggles with functional academics, vocational skills, expressive and receptive communication, social skills, motor and mobility skills, recreational and leisure skills, and daily living skills. **Exhibit 1.**

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

121. According to A.C.'s March 30, 2020, IEP, A.C. received approximately thirty and a half hours of specialized academic instruction per week, daily twenty-minute sessions of specialized physical health care services, thirty minutes of physical therapy per month, thirty minutes of career awareness services per week, extended school year services, and special transportation services. **Exhibit 1.**

122. A.C.'s IEP states that he "requires regular care to meet daily living needs" and is a " 'hands-on' type of [learner]." **Exhibit 1.**

123. A.C.'s March 30, 2020, IEP does not state whether A.C.'s instruction and/or services will be in-person or virtual.

124. A.C.'s March 30, 2020, IEP requires direct specialized academic instruction, physical health care services, physical therapy, and career awareness services to accommodate his disability so he can receive a FAPE. **Exhibit 1.**

125. On March 16, 2020, FCUSD ceased all in-person education due to the COVID-19 pandemic.

126. As a result of the March 16, 2020 closure of FCUSD schools, FCUSD altered A.C.'s IEP for the 2019-2020 school year to engage in virtual instruction and services without any prior written notice and/or participation of parents.

127. The alterations and concomitant placement of A.C. at home receiving virtual

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

instruction and services were procedurally defective because FCUSD:

    a.  Altered A.C.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.  Altered A.C.'s IEP without the meaningful participation of his parents;

    c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing A.C.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.  Failed to ensure that A.C. could access a free and appropriate public education on the same level as his non-disabled peers.

128. During the 2019-2020 school year, from March 16, 2020, through June 11, 2020, A.C. attended school at home, receiving virtual instruction and services. During the 2019-2020 extended school year session from June 15, 2020, through July 10, 2020, A.C. attended school at home, receiving virtual instruction and services.

129. During the 2020-2021 school year, A.C. attended school at home with virtual instruction and services until September 2020, when FCUSD offered a hybrid option.

FIRST AMENDED COMPLAINT                  CASE NO. 21-7333

130. A.C. returned to full-time in-person instruction in May of 2021.

131. Plaintiff Maria Alvarez-Garcia is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of A.C., because their claims fall within exceptions specified by law.

132. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>A.R.</u>

133. A.R. is eligible for special education from Conejo Valley Unified School District ("CVUSD") due to autism and a speech/language impairment. **Exhibit 2.**

134. As a result of A.R.'s autism and speech impairment, A.R. has global developmental impairments that adversely affect his educational abilities and performance. **Exhibit 2.**

135. A.R. struggles with functional academics, vocational skills, social skills, and expressive and receptive language. **Exhibit 2.**

136. According to A.R.'s November 15, 2019, IEP, A.R. received approximately thirty minutes of speech-language therapy consultation a month, approximately four hours of adapted physical education a week, approximately thirty hours of intensive individualized educational services a

FIRST AMENDED COMPLAINT                              CASE NO. 21-7333

week, approximately 18 hours of specialized academic instruction, and a behavior intervention plan. **Exhibit 2.**

137. A.R.'s IEP states that he has a variety of behavioral issues that require direct instruction **Exhibit 2.**

138. A.R.'s November 15, 2019, IEP does not state whether A.R.'s instruction and/or services will be in-person or virtual.

139. A.R.'s November 15, 2019, IEP requires adaptive physical education, intensive individualized services, and specialized academic instruction to accommodate his disability so he can receive a FAPE. **Exhibit 2.**

140. On March 16, 2020, CVUSD ceased all in-person education due to the COVID-19 pandemic.

141. As a result of the March 16, 2020 closure of CVUSD schools, CVSUD altered A.R.'s IEP for the 2019-2020 school year to engage in virtual instruction and services without any prior written notice and/or participation of parents.

142. The alterations and concomitant placement of A.R. at home receiving virtual instruction and services were procedurally defective because CVUSD:

   a. Altered A.R.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered A.R.'s IEP without the meaningful participation of his

parents;

   c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing A.R.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d.  Failed to ensure that A.R. could access a free and appropriate public education on the same level as his non-disabled peers.

143. During the 2019-2020 school year, from March 16, 2020, through June 11, 2020, A.R. attended school at home, receiving virtual instruction and services.

144. Upon information and belief, during the 2020-2021 school year, A.R. attended school at home with virtual instruction and services until March of 2021, when a hybrid option was offered by CVUSD.

145. Plaintiff Marina Rizzo is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of A.R., because their claims fall within exceptions specified by law.

146. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>C.A.</u>

147. C.A. is eligible for special education from Los Angeles Unified School District

FIRST AMENDED COMPLAINT                         CASE NO. 21-7333

("LAUSD") due to autism. **Exhibit 3.**

148. As a result of C.A.'s autism, C.A. has global developmental impairments that adversely affect his educational abilities and performance. **Exhibit 3.**

149. C.A. struggles with expressive language, visual motor skills, motor planning/praxis skills, completing multistep activities, and object control. **Exhibit 3.**

150. According to C.A.'s September 13, 2019, IEP, C.A. received thirty minutes of occupational therapy per week, four hours of speech-language therapy per month, adapted physical education for thirty minutes per week, and extended school year services. **Exhibit 3.**

151. C.A.'s September 13, 2019, IEP states, C.A.'s "disability of Autism impacts his ability to focus without redirection and prompting." **Exhibit 3.**

152. C.A.'s September 13, 2019, IEP does not state whether C.A.'s instruction and/or services will be in-person or virtual.

153. C.A. requires direct support, occupational therapy, speech-language therapy, and adapted physical education to accommodate his disability so he can receive a FAPE. **Exhibit 3.**

154. On March 16, 2020, LAUSD ceased all in-person education due to the COVID-19 pandemic.

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

155. As a result of the March 16, 2020 closure of LAUSD schools, LAUSD altered C.A.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or the proper participation of parents.

156. The alterations and concomitant placement of C.A. at home receiving virtual instruction and services were procedurally defective because LAUSD:

   a. Altered C.A.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered C.A.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing C.A.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that C.A. could access a free and appropriate public education on the same level as his non-disabled peers.

157. During the 2019-2020 school year, from March 16, 2020, through June 12, 2020, C.A. attended school at home, receiving virtual instruction and services.

158. Upon information and belief, during the 2020-2021 school year, C.A. attended

FIRST AMENDED COMPLAINT                                   CASE NO. 21-7333

30

school at home with virtual instruction and services until April of 2021, when he returned to in-person instruction and services.

159. Plaintiff Janine Angel is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of C.A., because their claims fall within exceptions specified by law.

160. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

D.R.

161. D.R. was eligible for special education from San Dieguito Union High School District ("SDUHSD") in Encinitas, California, and Poway Unified School District ("PUSD") in San Diego, California due to autism and "other health impairment." **Exhibit 4.**

162. As a result of D.R.'s disabilities, D.R. has communicative and functional impairments that adversely affect his educational abilities and performance. **Exhibit 4.**

163. D.R. struggles with functional academics, communication skills, fine motor skills, vocational skills, and daily living skills. **Exhibit 4.**

164. According to D.R.'s October 22, 2019, IEP, D.R. received accommodations,

First Amended Complaint                                      Case No. 21-7333

31

access to sensory strategies, modified functional skills curriculum, thirty-minute consultations with a behavior specialist and board-certified behavior analyst twice a month, six hours of specialized academic instruction per day, thirty minutes of occupational therapy a week, thirty minutes of speech-language therapy a week, extended school year services, sixty minutes of other transition services a year, and transportation services. **Exhibit 4.**

165. D.R.'s IEP states that he "requires constant adult supervision to ensure his safety." **Exhibit 4.**

166. D.R.'s October 22, 2019, IEP does not state whether D.R.'s instruction and/or services will be in-person or virtual.

167. D.R. requires direct specialized academic instruction, sensory resources, modifications, speech-language therapy, extended school year services, and occupational therapy services to accommodate his disability so he can receive a FAPE. **Exhibit 4.**

168. On March 16, 2020, PUSD ceased all in-person education due to the COVID-19 pandemic.

169. As a result of the March 16, 2020 closure of PUSD schools, PUSD altered D.R.'s IEP for the 2019-2020 school year to engage in virtual instruction and services without any prior written notice and/or participation of parents.

170. The alterations and concomitant placement of D.R. at home receiving virtual instruction and services were procedurally defective because PUSD:

    a.  Altered D.R.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.  Altered D.R.'s IEP without the meaningful participation of his parents;

    c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing D.R.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.  Failed to ensure that D.R. could access a free and appropriate public education on the same level as his non-disabled peers.

171. During the 2019-2020 school year, from March 16, 2020, through June 11, 2020, D.R. received virtual instruction and services at home.

172. During the 2020-2021 school year, D.R. did not receive any instruction and/or services from PUSD.

173. During the 2020-2021 school year, D.R. did not receive any instruction and/or services from SDUHSD until the schools in the district reopened in the Spring of 2021.

FIRST AMENDED COMPLAINT                CASE NO. 21-7333

174. Plaintiff Tamara Lowder is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of D.R., because their claims fall within exceptions specified by law.

175. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

### D.M.

176. D.M. is eligible for special education from Hesperia Unified School District ("HUSD") due to a specific learning disability and speech/language impairment. **Exhibit 5.**

177. As a result of D.M.'s specific learning disability and speech/language impairment., D.M. has communicative and functional impairments that adversely affect his educational abilities and performance. **Exhibit 5.**

178. D.M. struggles with functional academics, communication skills, and social skills. **Exhibit 5.**

179. According to D.M.'s March 4, 2020, IEP Addendum, D.M. received approximately three and a half hours of specialized instruction per day, thirty minutes of speech-language therapy twice per month, forty-five minutes of college awareness services four times a year, forty-five minutes of career awareness services four times a year, thirty-minutes of services at Desert

Mountain Children's Center three times per month, and accommodations. **Exhibit 5.**

180. D.M.'s IEP states that he "demonstrates difficulty initiating communication with adults and peers." **Exhibit 5.**

181. D.M.'s March 4, 2020, IEP Addendum and November 20, 2019 IEP do not state whether D.M's instruction and/or services will be in-person or virtual. **Exhibit 5.**

182. D.M. requires direct specialized academic instruction, speech-language therapy, college awareness services, career awareness services, Desert Mountain Children's Center services, and accommodations to accommodate his disability so he can receive a FAPE. **Exhibit 5.**

183. On March 16, 2020, HUSD ceased all in-person education due to the COVID-19 pandemic.

184. As a result of the March 16, 2020 closure of HUSD schools, HUSD altered D.M.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

185. The alterations and concomitant placement of D.M. at home receiving virtual instruction and services were procedurally defective because HUSD:

    a.  Altered D.M.'s IEP to complete virtual instruction without prior

written notice or any written notice;

   b. Altered D.M.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing D.M.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that D.M. could access a free and appropriate public education on the same level as his non-disabled peers.

186. During the 2019-2020 school year, from March 16, 2020, through May 28, 2020, D.M. attended school at home, receiving virtual instruction and services.

187. During the 2020-2021 school year, D.M. attended school at home with virtual instruction and services until April 5, 2021, when a hybrid option was offered by HUSD.

188. Plaintiff Michael Martin did not exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of D.M., because their claims fall within exceptions specified by law.

189. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

FIRST AMENDED COMPLAINT                              CASE NO. 21-7333

36

<u>D.N.</u>

190. D.N. is eligible for special education from Berryessa Union Elementary School District ("BUESD") due to an intellectual disability and an orthopedic impairment. **Exhibit 6.**

191. As a result of D.N.'s disabilities, D.N. has global impairments that adversely affect his educational abilities and performance. **Exhibit 6.**

192. D.N. struggles with communication skills, gross/fine motor development, vision, and functional academics. **Exhibit 6.**

193. According to D.N.'s January 14, 2020, IEP, D.N. received accommodations, approximately twenty-five and a half hours of specialized academic instruction per week, fifty minutes of speech-language therapy per week, thirty minutes of occupational therapy per week, two hours of physical therapy per week, extended school year services, and specialized transportation. **Exhibit 6.**

194. D.N.'s January 14, 2020, IEP states that "[f]or engaging in matching colors, fixing simple puzzles, etc. [D.N.] needs hand-over-hand assistance." **Exhibit 6.**

195. D.N.'s January 14, 2020 IEP does not state whether D.N.'s instruction and/or services will be in-person or virtual. **Exhibit 6.**

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

196. D.N. requires direct accommodations, specialized academic instruction, speech-language therapy, occupational therapy, and physical therapy to accommodate his disability so he can receive a FAPE. **Exhibit 6.**

197. On March 16, 2020, BUESD ceased all in-person education due to the COVID-19 pandemic.

198. As a result of the March 16, 2020 closure of BUESD schools, BUESD altered D.N.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

199. The alterations and concomitant placement of D.N. at home receiving virtual instruction and services were procedurally defective because BUESD:

   a. Altered D.N.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered D.N.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing D.N.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that D.N. could access a free and appropriate public

education on the same level as his non-disabled peers.

200.  During the 2019-2020 school year, from March 16, 2020, through June 5, 2020, D.N. attended school at home, receiving virtual instruction and services. During the 2019-2020 extended school year session, from July 6, 2020, through July 31, 2020, D.N. attended school at home, receiving virtual instruction and services.

201. During the 2020-2021 school year, D.N. attended school at home with virtual instruction and services until March 4, 2021, when BUESD offered in-person speech and occupational therapy. In-person schooling was offered on March 24, 2021.

202. Plaintiff Shushanik Khachaturian is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of D.N., because their claims fall within exceptions specified by law.

203. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>L.B.</u>

204. L.B. is eligible for special education from Capistrano Unified School District ("CUSD") due to autism and a speech/language impairment. **Exhibit 7**.

205. As a result of L.B.'s autism and speech/language impairment., L.B. has global

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

impairments that adversely affect his educational abilities and performance. **Exhibit 7**.

206. L.B. struggles with communication skills, gross/fine motor development, social skills, and functional academics. **Exhibit 7**

207. According to L.B.'s December 13, 2019, IEP, L.B. received approximately five hours of specialized academic instruction per day, thirty minutes of speech-language therapy twice per week, thirty minutes of occupational therapy once per week, extended school year services, sensory breaks, and specialized transportation. **Exhibit 7.**

208. L.B.'s December 13, 2019, IEP states that he "benefits from a structured classroom environment with a high staff to student ratio and predictable schedule." **Exhibit 7.**

209. L.B.'s December 13, 2019, IEP does not state whether his instruction and/or services will be in-person or virtual. **Exhibit 7.**

210. L.B. requires direct accommodations, specialized academic instruction, speech-language therapy, occupational therapy, and sensory breaks to accommodate his disability so he can receive a FAPE. **Exhibit 7.**

211. On March 16, 2020, CUSD ceased all in-person education due to the COVID-19 pandemic.

212. As a result of the March 16, 2020 closure of CUSD schools, CUSD altered L.B. 's IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

213. The alterations and concomitant placement of L.B. at home receiving virtual instruction and services were procedurally defective because CUSD:

    a. Altered L.B.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b. Altered L.B.'s IEP without the meaningful participation of his parents;

    c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing L.B.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d. Failed to ensure that L.B. could access a free and appropriate public education on the same level as his non-disabled peers.

214. During the 2019-2020 school year, from March 16, 2020, through June 4, 2020, L.B. attended school at home, receiving virtual instruction and services. During the 2019-2020 extended school year session, from June 15, 2020, through July 16, 2020, L.B. attended school at home, receiving virtual

instruction and services.

215. Upon information and belief, during the 2020-2021 school year, L.B. attended school at home with virtual instruction and services until March 2021, when a hybrid option was offered by CUSD.

216. Plaintiff Erin Bebereia is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of L.B., because their claims fall within exceptions specified by law.

217. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>D.B.</u>

218. D.B. is eligible for special education from Capistrano Unified School District ("CUSD") due to autism. **Exhibit 8.**

219. As a result of D.B.'s autism, D.B. has global impairments that adversely affect his educational abilities and performance. **Exhibit 8.**

220. D.B. struggles with verbal and non-verbal communication and social interaction. **Exhibit 8.**

221. According to D.B.'s February 6, 2020, IEP, D.B. received accommodations, sensory strategies, thirty minutes of speech/language therapy per week, forty minutes of intensive behavioral intervention services per week, fifteen minutes

First Amended Complaint                                    Case No. 21-7333

of speech/language consultation per month, and fifteen minutes of occupational therapy consultation four times per year. **Exhibit 8.**

222. D.B.'s February 6, 2020, IEP states that he has "impairments in verbal and nonverbal communication [and] social interaction." **Exhibit 8.**

223. D.B.'s February 6, 2020, IEP does not state whether D.B.'s instruction and/or services will be in-person or virtual. **Exhibit 8.**

224. D.B. requires direct accommodations, sensory activities, speech/language therapy, and intensive behavioral intervention to accommodate his disability so he can receive a FAPE. **Exhibit 8.**

225. On March 16, 2020, CUSD ceased all in-person education due to the COVID-19 pandemic.

226. As a result of the March 16, 2020 closure of CUSD schools, CUSD altered D.B.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

227. The alterations and concomitant placement of D.B. at home receiving virtual instruction and services were procedurally defective because CUSD:

    a. Altered D.B.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b. Altered D.B.'s IEP without the meaningful participation of his

parents;

c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing D.B.'s placement from in-person instruction and services to home placement with virtual instruction and services;

d.  Failed to ensure that D.B. could access a free and appropriate public education on the same level as his non-disabled peers.

228. During the 2019-2020 school year, from March 16, 2020, through June 4, 2020, D.B. attended school at home, receiving virtual instruction and services.

229. Upon information and belief, during the 2020-2021 school year, D.B. attended school at home with virtual instruction and services until March 2021, when a hybrid option was offered by CUSD.

230. Plaintiff Erin Bebereia is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of D.B., because their claims fall within exceptions specified by law.

231. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>E.W.</u>

232. E.W. is eligible for special education from San Juan Unified School District

FIRST AMENDED COMPLAINT                                CASE NO. 21-7333

("SJUSD") due to autism. **Exhibit 9.**

233. As a result of E.W.'s autism, E.W. has global impairments that adversely affect his educational abilities and performance. **Exhibit 9.**

234. E.W. struggles with expressive and receptive language, behavior, and social interactions. **Exhibit 9.**

235. According to E.W.'s October 31, 2019, IEP, E.W. received accommodations, assistive technology, thirty minutes of speech-language therapy twice per week, twenty-nine and a half hours of individual small group instruction per week, and special transportation services. **Exhibit 9.**

236. E.W.'s October 31, 2019, IEP states that he has "significant difficulties with expressive and receptive language, as well as challenges with social interactions." **Exhibit 9.**

237. E.W.'s October 31, 2019, IEP does not state whether E.W.'s instruction and/or services will be in-person or virtual. **Exhibit 9.**

238. E.W. requires direct accommodations, assistive technology, speech-language therapy, and individual and small group instruction to accommodate his disability so he can receive a FAPE. **Exhibit 9.**

239. On March 16, 2020, SJUSD ceased all in-person education due to the COVID-19 pandemic.

240. As a result of the March 16, 2020 closure of SJUSD schools, SJUSD altered E.W. 's IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

241. The alterations and concomitant placement of E.W. at home receiving virtual instruction and services were procedurally defective because SJUSD:

    a.  Altered E.W.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.  Altered E.W.'s IEP without the meaningful participation of his parents;

    c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing E.W.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.  Failed to ensure that E.W. could access a free and appropriate public education on the same level as his non-disabled peers.

242. During the 2019-2020 school year, from March 16, 2020, through June 9, 2020, E.W. attended school at home, receiving virtual instruction and services.

243. During the 2020-2021 school year, E.W. attended school at home with virtual instruction.

FIRST AMENDED COMPLAINT                CASE NO. 21-7333

244. Plaintiff Leanna Wasco is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of E.W., because their claims fall within exceptions specified by law.

245. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>E.G.</u>

246. E.G. is eligible for special education from Burbank Unified School District ("BUSD") due to multiple disabilities, including visual impairment. **Exhibit 10.**

247. As a result of E.G.'s multiple disabilities, E.G. has global impairments that adversely affect his educational abilities and performance. **Exhibit 10.**

248. E.G. struggles with functional academics, communication skills, gross/fine motor development, visual motor skills, social-emotional skills, and adaptive/daily living skills. **Exhibit 10.**

249. According to E.G.'s October 31, 2019, IEP, E.G. received accommodations, assistive technology, thirty hours of specialized academic instruction per week, two thirty-minute sessions of occupational therapy per week, two hours of physical therapy per year, two thirty-minute sessions of specialized vision services per week, two thirty-minute sessions of language and speech per

week, extended school year services, and specialized transportation services. **Exhibit 10.**

250. E.G.'s October 31, 2019, IEP states that he "requires assistance from an adult at all times to meet all his daily living needs." **Exhibit 10.**

251. E.G.'s October 31, 2019, IEP does not state whether this assistance will be in-person or virtual. **Exhibit 10.**

252. E.G. requires direct accommodations, assistive technology, specialized academic instruction, occupational therapy, vision services, and speech-language therapy to accommodate his disability so he can receive a FAPE. **Exhibit 10.**

253. On March 16, 2020, BUSD ceased all in-person education due to the COVID-19 pandemic.

254. As a result of the March 16, 2020 closure of BUSD schools, BUSD altered E.G.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

255. The alterations and concomitant placement of E.G. at home receiving virtual instruction and services were procedurally defective because BUSD:

 a. Altered E.G.'s IEP to complete virtual instruction without prior written notice or any written notice;

b. Altered E.G.'s IEP without the meaningful participation of his parents;

c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing E.G.'s placement from in-person instruction and services to home placement with virtual instruction and services;

d. Failed to ensure that E.G. could access a free and appropriate public education on the same level as his non-disabled peers.

256. During the 2019-2020 school year, from March 16, 2020, through May 21, 2020, E.G. received virtual instruction and services at home. During the 2019-2020 extended school year session, from June 15, 2020, through July 17, 2020, E.G. attended school at home, receiving virtual instruction and services.

257. During the 2020-2021 school year, E.G. attended school at home with virtual instruction and services until March 2021, when a hybrid option was offered by BUSD.

258. Plaintiff Jessica Granados is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of E.G., because their claims fall within exceptions specified by law.

259. Plaintiffs have neither waived nor abandoned any claims or arguments under

FIRST AMENDED COMPLAINT                                              CASE NO. 21-7333

IDEA or state law.

I.W.

260. I.W. is eligible for special education from Live Oak School District ("LOSD") due to an "other health impairment" and a speech-language impairment. **Exhibit 11.**

261. As a result of I.W.'s disabilities, I.W. has global developmental impairments that adversely affect her educational abilities and performance. **Exhibit 11.**

262. I.W. struggles with functional academics and speech. **Exhibit 11.**

263. According to I.W.'s April 15, 2019, IEP, I.W. received individualized accommodations, five hours of specialized academic instruction, fifty minutes of language and speech per week, and extended school year services. **Exhibit 11.**

264. I.W.'s IEP states that "[I.W.'s] language delays and academic delays impact her ability to access the general education classroom." **Exhibit 11.**

265. I.W.'s April 15, 2019, IEP does not state whether I.W.'s instruction and/or services will be in-person or virtual.

266. I.W. requires direct speech-language therapy and specialized academic instruction to accommodate her disability so she can receive a FAPE. **Exhibit 11.**

267. On March 13, 2020, LOSD ceased all in-person education due to the COVID-19 pandemic.

268. As a result of the March 16, 2020 closure of LOSD schools, LOSD altered I.W.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

269. The alterations and concomitant placement of I.W. at home receiving virtual instruction and services were procedurally defective because LOSD:

   a. Altered I.W.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered I.W.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing I.W.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that I.W. could access a free and appropriate public education on the same level as her non-disabled peers.

270. During the 2019-2020 school year, from March 16, 2020, through May 28, 2020, I.W. attended school at home, receiving virtual instruction and services.

FIRST AMENDED COMPLAINT                     CASE NO. 21-7333

271. During the 2020-2021 school year, I.W. attended school at home with virtual instruction and services until March 2021, when LOSD offered a hybrid option.

272. Plaintiff Dana West is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of I.W., because their claims fall within exceptions specified by law.

273. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>J.B.</u>

274. J.B. is eligible for special education from Lincoln Unified School District ("LUSD")  and the San Joaquin County Office of Education ("SJCOE") due to autism. **Exhibit 12.**

275. As a result of J.B.'s autism, J.B. has global impairments that adversely affect his educational abilities and performance. **Exhibit 12.**

276. J.B. struggles with fine motor skills, functional academics, adaptive behavior, social/emotional development, language, functional skills, and vocational skills. **Exhibit 12.**

277. According to J.B.'s November 1, 2019, IEP, J.B. received specialized accommodations, assistive technology, six hours of specialized academic

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

instruction per day, eight thirty-minute sessions of behavior intervention service consultations per year, thirty minutes of specialized physical health care services as often as needed, sixty minutes of speech-language services per month, thirty minutes of health and nursing assessment per year, specialized transportation, and extended school year services. **Exhibit 12.**

278. J.B.'s November 1, 2019, IEP states that he "has a need for a structured learning environment that incorporates Discrete Trial Training (DTT) methodology and utilization of principles of Applied Behavioral Analysis (ABA)." **Exhibit 12.** 279. J.B.'s November 1, 2019, IEP does not state whether this structured learning environment will be in-person or virtual. **Exhibit 12.**

280. J.B. requires direct specialized academic instruction, individualized accommodations, and health and nursing services to accommodate his disability so he can receive a FAPE. **Exhibit 12.**

281. On March 16, 2020, LUSD ceased all in-person education due to the COVID-19 pandemic.

282. As a result of the March 16, 2020 closure of LUSD schools, LUSD and SJCOE altered J.B. 's IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

283. The alterations and concomitant placement of J.B. at home receiving virtual instruction and services were procedurally defective because LUSD and SJCOE:

    a.  Altered J.B.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.  Altered J.B.'s IEP without the meaningful participation of his parents;

    c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing J.B.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.  Failed to ensure that J.B. could access a free and appropriate public education on the same level as his non-disabled peers.

284. During the 2019-2020 school year, from March 16, 2020, through May 27, 2020, J.B. received virtual instruction and services at home. During the 2019-2020 extended school year session, from June 1, 2020, through July 16, 2020, J.B. attended school at home, receiving virtual instruction and services.

285. During the 2020-2021 school year, J.B. attended school at home with virtual instruction and services until October 2020, when a hybrid option was offered

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

by LUSD.

286. Plaintiff Hannah Bell is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of J.B., because their claims fall within exceptions specified by law.

287. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>J.D.M.</u>

288. J.D.M. is eligible for special education from San Diego Unified School District ("SDUSD") due to his "other health impairment" and Attention-Deficit/Hyperactivity Disorder ("ADHD"). **Exhibit 13.**

289. As a result of J.D.M.'s autism, J.D.M. has global impairments that adversely affect his educational abilities and performance. **Exhibit 13.**

290. J.D.M. struggles with attention, adaptive skills, social skills, and transition skills. **Exhibit 13.**

291. According to J.D.M.'s February 13, 2020, IEP, J.D.M. received individualized modifications, specialized academic instruction for five hours per week, psychological services for two hours per year, transition/career awareness for one hour per year, transition/college awareness/preparation for one hour per year, and health nursing services for five hours per year. **Exhibit 13.**

First Amended Complaint                     Case No. 21-7333

292. J.D.M.'s February 13, 2020, IEP states that a "paraprofessional or special education staff will provide supplemental support to J.D.M." **Exhibit 13.**

293. J.D.M.'s February 13, 2020 IEP does not state whether J.D.M.'s instructions and/or services will be in-person or virtual. **Exhibit 13.**

294. J.D.M. requires direct specialized academic instruction, individualized accommodations, psychological services, transition/career awareness services, transition/college awareness/preparation, and health and nursing services to accommodate his disability so he can receive a FAPE. **Exhibit 13.**

295. On March 16, 2020, SDUSD ceased all in-person education due to the COVID-19 pandemic.

296. As a result of the March 16, 2020 closure of SDUSD schools, SDUSD altered J.D.M.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

297. The alterations and concomitant placement of J.D.M. at home receiving virtual instruction and services were procedurally defective because SDUSD:

   a. Altered J.D.M.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered J.D.M.'s IEP without the meaningful participation of his parents;

    c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing J.D.M.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.  Failed to ensure that J.D.M. could access a free and appropriate public education on the same level as his non-disabled peers.

298. During the 2019-2020 school year, from March 16, 2020, through June 9, 2020, J.D.M. attended school at home, receiving virtual instruction and services.

299. During the 2020-2021 school year, J.D.M. attended school at home with virtual instruction and services until April of 2021, when a hybrid option was offered by SDUSD.

300. Plaintiff Jesse McFaddin is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of J.D.M., because their claims fall within exceptions specified by law.

301. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>K.F.</u>

302. K.F. is eligible for special education from San Juan Unified School District

FIRST AMENDED COMPLAINT                             CASE NO. 21-7333

("SJUSD") due to an intellectual disability. **Exhibit 14.**

303. As a result of K.F.'s intellectual disability, K.F. has global developmental impairments that adversely affect her educational abilities and performance. **Exhibit 14.**

304. K.F. struggles with functional academics and speech. **Exhibit 14.**

305. According to K.F.'s October 30, 2019, IEP, K.F. received approximately seventeen and a half hours of specialized academic instruction per week, twenty-five minutes of speech-language therapy twice per week, adapted physical education five times per week, specialized transportation, and extended school year services. **Exhibit 14.**

306. K.F.'s IEP states that "[her] language delays and academic delays impact her ability to access the general education classroom." **Exhibit 14.**

307. K.F.'s October 30, 2019, IEP does not state whether K.F.'s instructions and/or services will be in-person or virtual.

308. K.F. requires direct speech-language therapy, adapted physical education, and specialized academic instruction to accommodate her disability so she can receive a FAPE. **Exhibit 14.**

309. On March 13, 2020, SJUSD ceased all in-person education due to the COVID-19 pandemic.

310. As a result of the March 16, 2020 closure of SJUSD schools, SJUSD altered K.F.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

311. The alterations and concomitant placement of K.F. at home receiving virtual instruction and services were procedurally defective because SJUSD:

    a.  Altered K.F.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.  Altered K.F.'s IEP without the meaningful participation of his parents;

    c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing K.F.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.  Failed to ensure that K.F. could access a free and appropriate public education on the same level as her non-disabled peers.

312. During the 2019-2020 school year, from March 16, 2020, through May 28, 2020, K.F. received virtual instruction and services at home. During the 2019-2020 extended school year session, from June 22, 2020, through July 16, 2020, K.F. attended school at home, receiving virtual instruction and services.

FIRST AMENDED COMPLAINT             CASE NO. 21-7333

59

313. During the 2020-2021 school year, K.F. attended school at home with virtual instruction and services until October 2020, when a hybrid option was offered by SJUSD.

314. Plaintiff Michele Florentz is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of K.F., because their claims fall within exceptions specified by law.

315. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>L.S.</u>

316. L.S. is eligible for special education from Murrieta Valley Unified School District ("MVUSD") due to an "other health" impairment. **Exhibit 15.**

317. As a result of L.S.'s disability, L.S. has global impairments that adversely affect his educational abilities and performance. **Exhibit 15.**

318. L.S. struggles with functional academics, communication skills, fine motor skills, and behavior skills. **Exhibit 15.**

319. According to L.S.'s January 27, 2020, IEP, L.S. received accommodations, access to a sensory gym, approximately twenty-six hours of specialized academic instruction per day, approximately six hours of a one-to-one aide trained in Intensive Behavioral Intervention ("IBI") services per day, ten sixty-

FIRST AMENDED COMPLAINT                                        CASE NO. 21-7333

minute sessions of IBI consultation per year, forty-five fifteen-minute sessions of speech-language collaboration services per year, ten fifteen-minute sessions of occupational therapy consults/collaborations per year, four fifteen-minute sessions of assistive technology collaborations per year, and extended school year services. **Exhibit 15.**

320. L.S.'s IEP states that he requires an "IBI Trained Aide" for six hours each day. **Exhibit 15.**

321. L.S.'s January 27, 2020, IEP does not state whether his instruction and/or services will be in-person or virtual, including the Trained Aide.

322. L.S. requires direct specialized academic instruction, sensory resources, modifications, and a one-to-one aide to accommodate his disability so he can receive a FAPE. **Exhibit 15.**

323. On March 16, 2020, MVUSD ceased all in-person education due to the COVID-19 pandemic.

324. As a result of the March 16, 2020 closure of MVUSD schools, MVUSD altered L.S.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

325. The alterations and concomitant placement of L.S. at home receiving virtual instruction and services were procedurally defective because MVUSD:

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

a. Altered L.S.'s IEP to complete virtual instruction without prior written notice or any written notice;

b. Altered L.S.'s IEP without the meaningful participation of his parents;

c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing L.S.'s placement from in-person instruction and services to home placement with virtual instruction and services;

d. Failed to ensure that L.S. could access a free and appropriate public education on the same level as his non-disabled peers.

326. During the 2019-2020 school year, from March 16, 2020, through June 5, 2020, L.S. attended school at home, receiving virtual instruction and services. During the 2019-2020 extended school year session, from June 15, 2020, through July 10, 2020, L.S. attended school at home, receiving virtual instruction and services.

327. During the 2020-2021 school year, L.S. attended school at home with virtual instruction and services until November 2020, when a hybrid option was offered by MVUSD.

328. Plaintiff Kerry Sarner is not required to exhaust administrative due process

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of L.S., because their claims fall within exceptions specified by law.

329. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

### L.L.

330. L.L. is eligible for special education from Pasadena Unified School District ("PUSD") due to an "other health" impairment and speech/language impairment. **Exhibit 16.**

331. As a result of L.L.'s disabilities, L.L. has global impairments that adversely affect his educational abilities and performance. **Exhibit 16.**

332. L.L. struggles with functional academics, communication skills, fine motor skills, and behavior skills. **Exhibit 16.**

333. According to L.L.'s January 7, 2020, IEP, L.L. received accommodations, specialized academic instruction for three hours per week, four hours of speech-language services per month, sixty minutes of occupational therapy per week, and extended school year services. **Exhibit 16.**

334. L.L.'s IEP states that he "demonstrates difficulty using appropriate pragmatic skills depending on the environment, situation, and audience." **Exhibit 16.**

335. L.L.'s January 7, 2020, IEP does not state whether L.L.'s instruction and/or

services will be in-person or virtual.

336. L.L. requires direct specialized academic instruction, accommodations, speech-language services, occupational therapy, and extended school year services to accommodate his disability so he can receive a FAPE. **Exhibit 16.**

337. On March 16, 2020, PUSD ceased all in-person education due to the COVID-19 pandemic.

338. As a result of the March 16, 2020 closure of PUSD schools, PUSD altered L.L.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

339. The alterations and concomitant placement of L.L. at home receiving virtual instruction and services were procedurally defective because PUSD:

   a. Altered L.L.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered L.L.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing L.L.'s placement from in-person instruction and services to home placement with virtual instruction and services;

     d.  Failed to ensure that L.L. could access a free and appropriate public education on the same level as his non-disabled peers.

340. During the 2019-2020 school year, from March 16, 2020, through May 28, 2020, L.L. received virtual instruction and services at home. During the 2019-2020 extended school year session, from June 3, 2020, through July 10, 2020, L.L. attended school at home, receiving virtual instruction and services.

341. Upon information and belief, during the 2020-2021 school year, L.L. attended school at home with virtual instruction and services until November 2020, when a hybrid option was offered by PUSD.

342. Plaintiff Yvonne Chavez-Lombardi is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of L.L., because their claims fall within exceptions specified by law.

343. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

M.R.

344. M.R. is eligible for special education from Los Angeles Unified School District ("LAUSD") due to a specific learning disability. **Exhibit 17.**

345. As a result of M.R.'s specific learning disability, M.R. has global developmental impairments that adversely affect her educational abilities and

First Amended Complaint                                        Case No. 21-7333

performance. **Exhibit 17.**

346. M.R. struggles with functional academics, auditory processing, and sensory-motor integration. **Exhibit 17.**

347. According to M.R.'s October 3, 2019, IEP, M.R. received approximately twenty-three hours of specialized education per week, accommodations, and extended school year services. **Exhibit 17.**

348. M.R.'s IEP states that she requires "one-on-one help when possible." **Exhibit 17.**

349. M.R.'s October 3, 2019, IEP does not state whether M.R.'s instruction and/or services will be in-person or virtual.

350. M.R. requires direct accommodations and specialized academic instruction to accommodate her disability so she can receive a FAPE. *Id.*

351. On March 13, 2020, LAUSD ceased all in-person education due to the COVID-19 pandemic.

352. As a result of the March 16, 2020 closure of LAUSD schools, LAUSD altered M.R.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

353. The alterations and concomitant placement of M.R. at home receiving virtual instruction and services were procedurally defective because LAUSD:

    a.  Altered M.R.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.  Altered M.R.'s IEP without the meaningful participation of his parents;

    c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing M.R.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.  Failed to ensure that M.R. could access a free and appropriate public education on the same level as her non-disabled peers.

354. During the 2019-2020 school year, from March 16, 2020, through June 12, 2020, M.R. received virtual instruction and services at home.

355. Upon information and belief, during the 2020-2021 school year, M.R. attended school at home with virtual instruction and services until March of 2021, when a hybrid option was offered by LAUSD.

356. Plaintiff Michelle Radich is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of M.R., because their claims fall within exceptions specified by law.

357. Plaintiffs have neither waived nor abandoned any claims or arguments under

FIRST AMENDED COMPLAINT                                CASE NO. 21-7333

IDEA or state law.

R.K.

358. R.K. is eligible for special education from Chino Valley Unified School District ("CVUSD") due to an "other health impairment" and a speech/language disability. **Exhibit 18.**

359. As a result of R.K.'s disabilities, R.K. has social and fine motor impairments that adversely affect his educational abilities and performance. **Exhibit 18.**

360. R.K. struggles with functional academics, communication skills, fine motor skills, and social skills. **Exhibit 18.**

361. According to R.K.'s October 16, 2019, IEP, R.K. received accommodations, access to sensory strategies, approximately twenty-three hours of special instruction a week, thirty minutes of language therapy per week, thirty minutes of adapted physical education per week, and thirty minutes of occupational therapy per week. **Exhibit 18.**

362. R.K.'s IEP states that he "continues to need direct modeling." **Exhibit 18.**

363. R.K.'s October 16, 2019, IEP does not state whether R.K.'s instruction and/or services will be in-person or virtual.

364. R.K. requires direct specialized academic instruction, sensory resources, modifications, speech-language therapy, adapted physical education, and

occupational therapy to accommodate his disability so he can receive a FAPE. **Exhibit 18.**

365. On March 16, 2020, CVUSD ceased all in-person education due to the COVID-19 pandemic.

366. As a result of the March 16, 2020 closure of CVUSD schools, CVUSD altered R.K.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

367. The alterations and concomitant placement of R.K. at home receiving virtual instruction and services were procedurally defective because CVUSD:

    a. Altered R.K.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b. Altered R.K.'s IEP without the meaningful participation of his parents;

    c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing R.K.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d. Failed to ensure that R.K. could access a free and appropriate public education on the same level as his non-disabled peers.

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

368. During the 2019-2020 school year, from March 16, 2020, through May 28, 2020, R.K. received virtual instruction and services at home. During the 2019-2020 extended school year session, from July 1, 2020, through August 1, 2020, R.K. attended school at home, receiving virtual instruction and services.

369. During the 2020-2021 school year, R.K. attended school at home with virtual instruction and services until November 2, 2020, when a hybrid option was offered by CVUSD.

370. Plaintiff Miranda Keck is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of R.K., because their claims fall within exceptions specified by law.

371. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>S.G.</u>

372. S.G. is eligible for special education from Lake Elsinore Unified School District ("LEUSD") due to autism. **Exhibit 19.**

373. As a result of S.G.'s autism, S.G. has global developmental impairments that adversely affect her educational abilities and performance. **Exhibit 19.**

374. S.G. struggles with employment training, independent living, communication, writing, and functional academics. **Exhibit 19.**

FIRST AMENDED COMPLAINT                                           CASE NO. 21-7333

70

375. According to S.G.'s October 17, 2019, IEP, S.G. received a speech-generating device and visual aids, an hour and fifteen minutes of speech-language therapy per month, five and a half hours of specialized academic instruction per week, one hour and fifty minutes of adapted physical education per month, specialized transportation, and extended school year services. **Exhibit 19.**

376. S.G.'s IEP states that she "requires significant prompting and models." **Exhibit 19.**

377. S.G.'s October 17, 2019, IEP does not state whether S.G.'s instruction and/or services will be in-person or virtual.

378. S.G. requires direct speech-language therapy and specialized academic instruction to accommodate her disability so she can receive a FAPE. **Exhibit 19.**

379. On March 13, 2020, LEUSD ceased all in-person education due to the COVID-19 pandemic.

380. As a result of the March 16, 2020 closure of LEUSD schools, LEUSD altered S.G.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

381. The alterations and concomitant placement of S.G. at home receiving virtual instruction and services were procedurally defective because LEUSD:

FIRST AMENDED COMPLAINT

CASE NO. 21-7333

a. Altered S.G.'s IEP to complete virtual instruction without prior written notice or any written notice;

b. Altered S.G.'s IEP without the meaningful participation of his parents;

c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing S.G.'s placement from in-person instruction and services to home placement with virtual instruction and services;

d. Failed to ensure that S.G. could access a free and appropriate public education on the same level as her non-disabled peers.

382. During the 2019-2020 school year, from March 16, 2020, through June 12, 2020, S.G. received virtual instruction and services at home. During the 2019-2020 extended school year session, from June 8, 2020, through July 16, 2020, S.G. attended school at home, receiving virtual instruction and services.

383. Upon information and belief, during the 2020-2021 school year, S.G. attended school at home with virtual instruction and services until April of 2021, when a hybrid option was offered by LEUSD.

384. Plaintiff Tina Gunn is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of

FIRST AMENDED COMPLAINT                                      CASE NO. 21-7333

72

S.G., because their claims fall within exceptions specified by law.

385. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

<u>S.M.</u>

386. S.M. is eligible for special education from Lake Elsinore Unified School District ("LEUSD") due to an intellectual disability. **Exhibit 20.**

387. As a result of S.M.'s intellectual disability, S.M. has global developmental impairments that adversely affect her educational abilities and performance. **Exhibit 20.**

388. S.M. struggles with comprehensive and expressive language, behavioral skills, fine motor skills, and functional academics. **Exhibit 20.**

389. According to S.M.'s March 4, 2020, IEP, S.M. received accommodations, four hours and fifteen minutes of specialized academic instruction per day, twenty-four twenty-five-minute sessions of speech per semester, four forty-eight-minute sessions of specialized academic instruction per week, specialized transportation, and extended school year services. **Exhibit 20.**

390. S.M.'s IEP states that her "defiant behavior such as non-compliance, verbal protests, and tantrums impedes learning." **Exhibit 20.**

391. S. M.'s March 4, 2020, IEP does not state whether S.M.'s instruction and/or

services will be in-person or virtual.

392. S.M. requires direct accommodations and specialized academic instruction to accommodate her disability so she can receive a FAPE. **Exhibit 20.**

393. On March 13, 2020, LEUSD ceased all in-person education due to the COVID-19 pandemic.

394. As a result of the March 16, 2020 closure of LEUSD schools, LEUSD altered S.M.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

395. The alterations and concomitant placement of S.M. at home receiving virtual instruction and services were procedurally defective because LEUSD:

   a. Altered S.M.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered S.M.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing S.M.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that S.M. could access a free and appropriate public

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

74

education on the same level as his non-disabled peers.

396. During the 2019-2020 school year, from March 16, 2020, through June 12, 2020, S.M. attended school at home, receiving virtual instruction and services. During the 2019-2020 extended school year session, from June 15, 2020, through July 16, 2020, L.M. attended school at home, receiving virtual instruction and services.

397. Upon information and belief, during the 2020-2021 school year, S.M. attended school at home with virtual instruction and services until March of 2021, when a hybrid option was offered by LEUSD.

398. Plaintiff Megan Meier is not required to exhaust administrative due process proceedings against defendants under 20 U.S.C. § 1415(i)(2), on behalf of S.M., because their claims fall within exceptions specified by law.

399. Plaintiffs have neither waived nor abandoned any claims or arguments under IDEA or state law.

CLASS ACTION ALLEGATIONS

General Class Action Allegations

400. Plaintiffs bring this action on behalf of themselves and all other similarly situated school-aged children with disabilities covered by IDEA in California and their parents to assert the claims alleged in this complaint on a common

FIRST AMENDED COMPLAINT                                  CASE NO. 21-7333

basis. Specifically, Plaintiffs seek a judgment declaring that the plaintiffs', the class members', unilateral change of educational placement for more than ten cumulative days in each of the 2019-2020 and 2020-2021 school years respectively, from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against plaintiffs under IDEA, the Cal. Educ. Code, § 504, the ADA, and § 1983. Plaintiffs also seek an injunction to prevent Governor Newsom, CDE, the Defendants herein, and other similarly situated LEAs from engaging in similar conduct for more than ten cumulative days in the 2021-2022 school year and beyond, in the event of any future school closures.

401. A class action is a superior means, and the only practicable means, by which plaintiffs and unknown class members can challenge the actions the Defendants herein and other similarly situated LEAs in California, in restricting the rights of named Plaintiffs and similarly situated class members, under IDEA, the Cal. Educ. Code, the ADA, § 504, § 1983, and RICO without providing them due process of law.

402. This action is brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 (a) and 23(b)(2).

403. This action satisfies the numerosity, commonality, typicality, and adequacy

requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2), where applicable.

### Rule 23(a)(1):  Numerosity

404. The class is so numerous that joinder is impracticable.

405. All the putative class members are children with disabilities under IDEA in California and their parents.

406. The total number of individuals denied the procedural safeguards under IDEA–either in the past, currently, or in the future – will likely number in the thousands.

### Rule 23(b)(2):  Commonality

407. Common questions of law and fact exist as to all members of the classes.

408. All class members seek relief on the common legal question of whether the Defendants herein and other similarly situated LEAs violated IDEA, the Cal. Educ Code, the ADA, § 504, § 1983, and RICO by altering plaintiffs' IEPs and changing their educational placement without following the regulations promulgated under the statutes.

409. All class members also present common factual questions regarding the Defendants herein and similarly situated LEAs' closures of schools and class members' concomitant educational placement.

410. All class members also present common factual questions regarding whether the CDE failed to appropriately monitor the Named LEAs and similarly situated LEAs in California and provide the LEAs (collectively) with the resources and expertise necessary to protect its disabled students' procedural safeguards guaranteed by IDEA.

411. All class members seek injunctive relief requesting that the Court:  1)  Issue a judgment declaring that the class members' pendency placement is in-person instruction and services; 2)  Issue a judgment declaring that Defendants herein and other similarly situated LEAs' unilateral change of placement of plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against plaintiffs under IDEA, the Cal. Educ. Code, § 504, the ADA, and § 1983; 3) Issue a judgment declaring that the CDE failed to monitor and provide proper oversight and resources to the Named LEAs and similarly situated LEAs during the COVID-19 pandemic as required under IDEA and the Cal. Educ. Code; 4)  Order the CDE and the Named LEAs and other similarly situated LEAs to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members unless the U.S. DOE issues IDEA waivers; 5) Assign a Special Monitor to:  a) oversee the completion of

FIRST AMENDED COMPLAINT                                           CASE NO. 21-7333

78

Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;  b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; c) ensure the expert recommendations are included in writing in the class members' IEP documents; 6)   Require Governor Newsom, Defendants herein, and other similarly situated LEAs to comply with IDEA, the Cal. Educ. Code, the ADA, § 504, and § 1983 in the event of any future school closures; and 7) Assign a RICO Special Monitor to:  a) oversee the completion of an independent audit of defendants' expenditures of their IDEA Part B Funds from March of 2020 to the present;  b) oversee the defendants' expenditures of their IDEA Part B Funds for the 2021-2022 school year to ensure defendants spend IDEA Part B Funds for instruction and/or services for students with disabilities under IDEA, and c) ensure any IDEA Part B Funds that defendants spent on items other than instruction and/or services for students with disabilities under IDEA from March of 2020 through the present are reimbursed to a monitored account to be spent only upon review and approval by the RICO Special Monitor.

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

<u>Rule 23(a)(3):  Typicality</u>

412. Plaintiffs' claims are typical of the claims of other respective members of the class.

413. Like all class members, plaintiffs are children with disabilities under IDEA in California and/or their parents, who were denied the procedural due process or substantive rights provided by IDEA, the Cal. Educ. Code, the ADA, § 504, and § 1983.

414. All members of the class claim that the Defendants herein violated their procedural and substantive due process rights provided by IDEA, the Cal. Educ. Code, the ADA, § 504, and § 1983.

415. All members of the class seek the same injunctive relief.

416. All members of the class, including named Plaintiffs, seek a judgment declaring that defendants' actions were unlawful and an injunction preventing defendants from committing such actions in the future.

416. There is nothing distinctive about named plaintiffs' claims for declaratory, injunctive, or pendency relief that would lead to a different result in their case than in any case involving other class members.

<u>Rule 23(a)(4):  Adequacy</u>

417. Plaintiffs are adequate representatives of the class because their interest in the

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

80

vindication of their rights is aligned with the interests of the other class members.

418. Plaintiffs are members of the class, and their interests do not conflict with those of the other class members concerning any claims.

419. Plaintiffs are represented by attorneys from the Brain Injury Rights Group, who have experience litigating complex civil rights matters in federal court and have detailed knowledge of IDEA, § 504, the ADA, § 1983, RICO, and other relevant issues.

420. Class counsel has developed and continues to develop relationships with Plaintiffs and others similarly situated.

<u>Rule 23(b)(2):  Declaratory and Injunctive Relief Class</u>

421. A class action is appropriate for declaratory and injunctive relief under Rule 23(b)(2) because defendants have acted on grounds that generally apply to the class – namely the unilateral change of placement in March of 2020, from in-person instruction and services to virtual instruction and services – without complying with plaintiffs' rights under IDEA, the Cal. Educ. Code, § 504, the ADA, and § 1983.

422. The class seeks declaratory and injunctive relief to enjoin Governor Newsom, the CDE, and its LEAs from denying the rights guaranteed under the IDEA,

the Cal. Educ. Code, § 504, the ADA, and § 1983 to all California children with disabilities. Specifically, Plaintiffs seek a judgment declaring that during the 2019-2020 and 2020-2021 school years, the unilateral change in educational placement by Defendants for more than ten cumulative days each school year respectively, violated the procedural safeguards of IDEA and discriminated against plaintiffs under IDEA, the Cal. Educ. Code, § 504, the ADA, and § 1983.  Plaintiffs also seek an injunction to prevent Governor Newsom, Defendants herein, and other similarly situated LEAs from unilaterally changing the Plaintiffs' educational placement for more than ten cumulative days in the 2021-2022 school year in the event of any future school closures.

423. Class status is particularly appropriate because there is a risk that any individual member's claim for declaratory or injunctive relief will become moot before the litigation is resolved.  There is a risk that a class member that is or was a senior during the 2019-2020 and 2020-2021 school years will lose eligibility for injunctive relief under IDEA.

<u>Rule 23(b)(3):  Damages Class</u>

424. Plaintiffs only seek nominal damages and prospective injunctive relief at this time. However, no claims for damages should be deemed waived by this

lawsuit.

## CAUSES OF ACTION

### COUNT ONE
### SYSTEMIC VIOLATIONS OF THE INDIVIDUALS WITH DISABILITIES ACT

#### Systemic Violation 1:  Prior Written Notice

425. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

426. 20 U.S.C. § 1415(c)(1) requires that an LEA give prior written notice of any action proposed by the LEA regarding the provision of a Free Appropriate Public Education ("FAPE").

427. The Named LEAs did not give plaintiffs prior written notice of their closure of schools and alteration of plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services.

428. Governor Newsom and the CDE failed to appropriately monitor and conduct oversight of the Defendants to ensure they complied with IDEA's procedural safeguards upon the March 2020 closing of their schools.

#### Systemic Violation 2: Educational Placements

429. Under the IDEA, a school district may not alter a student's educational

placement for more than ten cumulative days in a school year without giving notice to the parent.

430. Following the tenth day, IDEA's "stay-put" procedural safeguard is triggered, and the Student must be returned to their status quo educational placement.

431. In March 2020, Defendants made the unilateral decision to transition students from in-person instruction and services to remote instruction and services that lasted for more than ten cumulative days.

432. Thereafter, Defendants failed to return students with disabilities to their current educational placement, as drafted in their IEPs, and failed to reconvene IEP meetings to revise and develop a remote IEP with the parents.

433. 20 U.S.C. § 1414(e) states that each LEA and SEA "shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child."

430. 20 U.S.C. § 1415(j) states, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).

431. 20 U.S.C. § 1415(j) obligates courts to implement pendency placement via an automatic injunction without analyzing the traditional injunction elements.

*Ridley School Dist. v. M.R.*, 2015 WL 1619420, *4 (2015) (The U.S. Supreme Court "has emphasized that the provision's text is 'unequivocal' and 'states plainly' that the child 'shall' remain in his current educational placement 'during the pendency of any proceedings initiated under the act.'").

432. Defendants herein did not ensure that the parents of each child with a disability were included as members of an IEP Team that made decisions on the educational placement of their children.

433. Defendants herein did not maintain plaintiffs' pendency placement through in-person instruction.

434. Governor Newsom and the CDE failed to appropriately monitor and conduct oversight of the Named LEAs to ensure they complied with IDEA's procedural safeguards upon the March 2020 closing of its schools.

435. Plaintiffs are entitled to all appropriate relief available under IDEA, including injunctive relief declaring that the class members' pendency placement is in-person instruction and requiring Governor Newsom and Defendants to comply with IDEA in the event of any future school closures.

<u>Systemic Violation 3:  Failure to Reconvene IEP Meetings</u>

436. 20 U.S.C. § 1414(d)(3)(F) states that the entire IEP Team may amend an IEP.

437. The Named LEAs did not reconvene IEP Team Meetings to change plaintiffs'

IEPS to complete virtual instruction and services.

438. Governor Newsom and the CDE failed to appropriately monitor and conduct oversight of the Named LEAs to ensure that they complied with IDEA's procedural safeguards upon the March 2020 closing of its schools.

Systemic Violation 4:  Discrimination based on Disability and Denial of Access to Educational Services

439. Defendants Governor Newsom and the CDE must ensure that each Named LEA takes steps to ensure that children with disabilities within its jurisdiction have access to the same educational opportunities as their non-disabled peers. 20 U.S.C. § 1412(a)(2); §1413(a)(1); 34 C.F.R. § 300.110.

440. Defendants' systemic failure to ensure that children with disabilities had appropriate access to the same educational opportunities as their non-disabled peers is a violation of IDEA.

441. Defendants' actions have caused plaintiffs damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

COUNT TWO
VIOLATION OF THE CALIFORNIA EDUCATION CODE § 56000 *et seq.*

442. Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth herein.

443. As described at length above, defendants failed to provide plaintiffs procedural safeguards upon the termination of in-person instruction in March of 2020.

444. Defendants failed to comply with the procedural requirements for prior written notice, educational placements, pendency placements, IEP Team Meetings, and equal access to instruction and services for plaintiffs in violation of California Education Code, § 56000 *et seq*.

445. Defendants' actions caused plaintiffs damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

446. All class members seek injunctive relief requesting that the Court: 1) Issue a judgment declaring that the class members' pendency placement is in-person instruction and services; 2) Issue a judgment declaring that the Named LEAs and other similarly situated LEAs' unilateral change of placement of plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of the California Education Code; 3) Issue a judgment declaring that Governor Newsom and the CDE failed to monitor and provide proper oversight and resources to the Named LEAs and other similarly situated LEAs during the COVID-19 pandemic as required under IDEA and the California Education Code; 4) Order Governor Newsom, the

FIRST AMENDED COMPLAINT                                          CASE NO. 21-7333

CDE and the Named LEAs and other similarly situated LEAs to comply with the procedural safeguards guaranteed by the California Education Code for the 2021-2022 school year for the class members unless the U.S. DOE issues IDEA waivers; 5) Assign a Special Monitor to:  a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;  b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; c) ensure the expert recommendations are included in writing in the class members' IEP documents; 6)  Require Governor Newsom, the CDE, the Named LEAs and other similarly situated LEAs to comply with the California Education Code in the event of any future school closures for which the U.S. DOE does not issue IDEA waivers.

COUNT THREE
VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. § 794

447. Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth herein.

448. Section 504 of the Rehabilitation Act of 1973 and its implementing regulations provide, "no otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a).

449. Among other requirements, entities subject to Section 504 must provide equal opportunity to qualified persons with disabilities to participate in or benefit from any aid, benefit, or service they make available.   34 C.F.R. § 104.4(b)(1)(ii).

450. Entities subject to Section 504 must avoid otherwise limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.   34 C.F.R. § 104.4(b)(1)(vii).

451. A person has a disability under Section 504 if they have a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. § 12102(1).

FIRST AMENDED COMPLAINT                               CASE NO. 21-7333

452. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working.  42 U.S.C. § 12102(2)(A).

453. A "qualified individual with a disability" is one who, with or without reasonable accommodations for their disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of a recipient of federal financial assistance.  29 U.S.C. § 794(a).

454. A "program or activity" includes local education agencies, public boards of education, and school systems.   29 U.S.C. § 794(b)(2)(B), 20 U.S.C. § 7801(26). A "recipient of federal financial assistance" is a public or private agency or other entity to which federal financial assistance is extended directly or through another recipient.  34 C.F.R. § 104.3(f).

455. Plaintiffs are individuals having impairments, including but not limited to specific learning disorders that affect the major life activity of learning.

456. Plaintiffs are otherwise qualified individuals with disabilities who meet essential eligibility requirements to receive services from or participate in the programs or activities of the Named LEAs and other similarly situated LEAs. 42 U.S.C. § 12131(2); 29 U.S.C. § 794(a).

457. The CDE and Named LEAs receive federal funds to comply with § 504.

FIRST AMENDED COMPLAINT                              CASE NO. 21-7333

458. The CDE and Named LEAs are entities subject to the non-discrimination requirements of Section § 504.  29 U.S.C. § 794(a);  34 C.F.R. § 104.4.

459. The Named LEAs and other similarly situated LEAs' closure of in-person instruction in March of 2020 discriminated against plaintiffs as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room services, by denying them equal access and otherwise limiting their access to education, programs, and services as compared to their non-disabled peers.  34 C.F.R. §§ 104.4(a), 104.4(b)(ii) and (iv).

460. The Named LEAs' closure of in-person instruction in March of 2020 was illegal disability-based discrimination that violated Section 504 of the Rehabilitation Act of 1973.

461. As a proximate cause of these violations of Section 504, plaintiffs have suffered harm as set forth above.

COUNT FOUR
VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT,
42 U.S.C. § 12101

462. Plaintiffs incorporate all prior allegations.

463. Title II of the ADA and its implementing regulations forbid public entities, including local educational agencies, from excluding or denying people with

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

91

disabilities the benefits of its services, programs, or activities or discriminating based on disability.  42 U.S.C. § 12132; 28 C.F.R. § 35.104.

464. Prohibited disability-based discrimination by public entities includes the failure to provide qualified individuals with disabilities an equal opportunity to participate in or benefit from aids, benefits, or services or "otherwise limit" a qualified individual with a disability in the enjoyment of any right, privilege, aid, benefit, or service.  28 C.F.R. § 35.130(b)(1)(h) & (vii).  Prohibited discrimination additionally includes the failure to make reasonable modifications as necessary to avoid discrimination against an individual based on their disability.  28 C.F.R. § 35.130(b)(7).

465. An "individual with a disability" is one who has a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. § 12102(1).

466. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working.  42 U.S.C. § 12102(2)(A).

467. A "qualified individual with a disability" is one who, with or without reasonable accommodations for his or her disability, meets essential eligibility

requirements to receive services from or participate in the programs or activities of the public entity.  42 U.S.C. § 12131(2).

468. Plaintiffs are individuals having impairments, including but not limited to specific learning disorders, that affect the major life activity of learning.  42 U.S.C. § 12102(2)(A).

469. Plaintiffs are otherwise qualified individuals with disabilities who meet the essential eligibility requirements to receive services from or participate in the programs or activities of CDE and other similarly situated LEAs.  42 U.S.C. § 12131(2).

470. Governor Newsom, the CDE, and the Named LEAs are public entities forbidden to discriminate based on disability.  42 U.S.C. § 12132.

471. The Named LEAs and other similarly situated LEAs' closure of in-person instruction in March of 2020 discriminated against plaintiffs as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room services, by denying them equal access and otherwise limiting their access to education, programs, and services as compared to their non-disabled peers.  34 C.F.R. §§ 104.4(a), 104.4(b)(ii) and (iv).

472. As a proximate cause of these violations of Title II of the Americans with

Disabilities Act, plaintiffs have suffered harm as set forth above.

COUNT FIVE
VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S.
CONSTITUTION
(42 U.S.C. §1983) EQUAL PROTECTION

473.   Plaintiffs incorporate all prior allegations.

474.   Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject
> to the jurisdiction thereof, are citizens of the United States and
> of the State wherein they reside. No State shall make or enforce
> any law which shall abridge the privileges or immunities of
> citizens of the United States; nor shall any State deprive any
> person of life, liberty, or property, without due process of law;
> nor deny to any person within its jurisdiction the equal protection
> of the laws.

U.S. CONST., amend. XIV, § 1.

475. In order to provide a remedy for violations of the Fourteenth Amendment,

Congress has enacted § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against
> a judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a

FIRST AMENDED COMPLAINT                          CASE NO. 21-7333

> declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

476. Defendants deprived plaintiffs of their rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, when it closed its in-person instruction in March of 2020.

477. Specifically, student plaintiffs have been deprived of their right to equal protection under the Fourteenth Amendment by defendants' acts under the color of state authority.

478. Defendant Governor Newsom's closure of schools in March of 2020 resulted in a disparate impact on plaintiffs due to their disabilities in violation of the ADA and § 504.

479. Plaintiffs are all students with disabilities under the ADA and § 504.

480. Defendants closed schools in March of 2020 in response to the COVID-19 Pandemic.

481. As a direct and proximate result thereof, plaintiffs suffered harm, including significant regressions in skills and loss of competencies.

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

482. Defendants rendered the plaintiffs more vulnerable to harm by closing their schools.

## COUNT SIX
## VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION
## (42 U.S.C. §1983) SUBSTANTIVE DUE PROCESS

483.   Plaintiffs incorporate all prior allegations.

484.   Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., amend. XIV, § 1.

485.   In order to provide a remedy for violations of the Fourteenth Amendment, Congress has enacted § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

> declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

486. Defendants deprived plaintiffs of their substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, when it closed its in-person instruction in March of 2020.

487. Specifically, plaintiffs have been deprived of their right to education as guaranteed by the California Constitution.

488. The California Constitution provides that: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement." Cal. Const. art. IX, § 1.

489. Defendants' closure of schools in March of 2020 violated plaintiffs' substantive due process rights under the California Constitution.

490. As a direct and proximate result thereof, plaintiffs suffered harm, including significant regressions in skills and loss of competencies.

<u>COUNT SEVEN</u>

FIRST AMENDED COMPLAINT                                          CASE NO. 21-7333

97

## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. §1962(c)
### (Against Individual Defendants)

491. Plaintiffs incorporate by reference all preceding paragraphs.

492. This RICO cause of action arises from a scheme by individual defendants Governor Gavin Newsom, in his official capacity, Tony Thurmond, in his official capacity as Superintendent of Schools for the State of California; Chriss Essman in his official capacity as an employee of the CDE, Andrew G. Alvarado, in his official capacity as Superintendent of Fresno Central Unified Public School District, Mark W. McLaughlin, Ed.D., in his official capacity as Superintendent of Conejo Valley Unified Public School District, Austin Beutner, in his official capacity as Superintendent of the Los Angeles Unified Public School District, Lucille Lynch, in her official capacity as Superintendent of the San Dieguito Union High School District; Dr. Roxane Fuentes, in her official capacity as Superintendent of Hesperia Union Public School District, Kirsten M. Vitale Brulte, in her official capacity as Superintendent of Berryessa Unified Public School District, Kent Kern, in his official capacity as Superintendent of San Juan Unified School District, Dr. Matt Hill, in his official capacity as Superintendent of Burbank Unified Public School District, Matthew Gulbrandsen, in his official capacity as

Superintendent of Live Oak Unified Public School District, Kelly Dextraze in her official capacity as the Superintendent of Lincoln Unified School District, Dr. Troy A. Brown in his official capacity as Superintendent of the San Joaquin County Office of Education, Dr. Lamont A. Jackson, in his official capacity as Superintendent of the San Diego Unified School District, Cindy Marten, in her official capacity as Superintendent of the San Diego Unified School District for the 2019-2020 school year, Patrick Kelley, in his official capacity as Superintendent of Murrieta Valley Unified School District, Brian McDonald, Ed.D., in his official capacity as Superintendent of Pasadena Unified School District, Norm Enfield, Ed.D., in his official capacity as Superintendent of Chino Valley Unified School District, and Dr. Doug Kimberly, in his official capacity as Superintendent of Lake Elsinore Unified Public School District to fraudulently use their enterprises – the CDE and the School District Defendants – to defraud plaintiffs, the beneficiaries of IDEA Part B, of over $1.3 billion by making false assurances to the United States Department of Education that the CDE and its LEAs complied with IDEA during the COVID-19 pandemic. Exhibit 25.

493. As defined in 18 U.S.C. §§ 1961(3) and 1964(c), each plaintiff is a person.

494. As defined in 18 U.S.C. §§ 1961 (3) and 1964 (c), each individual defendant is a person.

## The Applicable Statutes

495. Under 18 U.S.C. § 1962(c), it shall be unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt."

496. It is unlawful to violate any RICO substantive provisions, including § 1962(c).

497. 18 U.S.C. § 1964(a) creates a private cause of action to "prevent and restrain violations" of section 1962.

## The Enterprises

498. The enterprises, as described in 18 U.S.C. § 1961(4), are the California Department of Education ("CDE"), the Fresno Central Unified School District ("FCUSD"), the Conejo Valley Unified School District ("CVUSD"), the Los Angeles Unified School District ("LAUSD"), the Poway Unified School District ("PUSD"), the San Dieguito Union High School District ("SDUHSD"), the Hesperia Unified School District ("HUSD"), the Berryessa Union School District ("BUSD"), the Capistrano School District ("CSD"), the

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

San Juan Unified School District ("SJUSD"), the Burbank Unified School District ("BSD"), the Live Oak Unified School District ("LOUSD"), the Lincoln Unified School District ("LUSD"), the San Joaquin County Office of Education ("SJCOE"), the San Diego Unified School District ("SDSD"), the Murrieta Valley Unified School District ("MVUSD"), the Pasadena Unified School District ("PUSD"), the Chino Valley Unified School District ("CVUSD") and the Lake Elsinore Unified School District ("LEUSD").  Each enterprise is an association, in fact, consisting of individuals who function together as a continuing unit with consensual decision-making authority. Individual defendants herein conduct the affairs of their respective enterprise in part through predicate activity which defrauds plaintiffs through false assurances that the CDE, the school district defendants, and similarly situated Local Education Agencies ("LEAs") complied with IDEA during the COVID-19 pandemic.

499. CDE assured the U.S. DOE that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.500 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." Exhibits 25-29.

500. CDE assured the U.S. DOE that "[t]he Chief Executive Officer of a State or

designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." *Id*.

501. Each individual defendant named herein conducted the affairs of his/her respective enterprise.

502. Each enterprise operated as an ongoing organization separate and distinct from the individual defendants.

503. Each enterprise has a structure separate and apart from the racketeering activity in which the individual defendants engaged.  Each enterprise is a governmental entity that consists of numerous different individuals who function together with consensual decision-making authority to conduct the management and operation of the particular governmental entity.

504. Each enterprise had longevity sufficient to permit their respective individual RICO defendants to pursue the enterprise's purpose.

505. The activities of each enterprise affected interstate commerce through the mail

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

and interstate wires with the U.S. DOE in Washington D.C.  Each enterprise affected interstate commerce through each individual defendant's unlawful transmission of assurances of compliance with IDEA via interstate electronic mail that was fraudulently prepared and submitted in furtherance of the racketeering scheme.  Each enterprise affected interstate commerce based on each individual defendant's collection of IDEA Part B funds wired to them through interstate banks from the U.S. DOE based on these fraudulent assurances.

## The Racketeering Violation

506. On or about March of 2020 and continuing up through the date of the filing of this complaint, each individual RICO defendant named herein, a person associated with or employed by their respective enterprise, did knowingly and unlawfully conduct, or participate, directly or indirectly, in each enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1) and 1961 (5), all in violation of 18 U.S.C.§ 1962(c).

507. Each defendant engaged in a pattern of racketeering activity by committing at least two acts of racketeering activity within ten years of each individual act.

508. Each individual defendant's actions violated the federal mail and wire fraud racketeering activities.

509. From March of 2020 through the present, each individual RICO defendant knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S.C. § 1962(c) by committing the predicate acts of wire fraud and mail fraud as set forth below.  The fraudulent schemes involved using the interstate wires to defraud plaintiffs, the beneficiaries of IDEA Part B Funds, of their procedural and substantive rights.

<u>Predicate Acts by Officials of Each Enterprise</u>

<u>Defendants Tony Thurmond and Chris Essman for the CDE</u>

510. Upon information and belief, Defendant Tony Thurmond, in his official capacity as Superintendent for the California Department of Education, via mail fraud through interstate commerce, made assurances to the U.S. DOE, between January of 2019 and July of 2019, that CDE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act."  Exhibits 25-26.

511. In addition, upon information and belief, Tony Thurmond, in his official capacity as State Superintendent for CDE, via mail fraud through interstate commerce, made assurances to the U.S. DOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536

and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-26.**

512. In addition, upon information and belief, Defendant Tony Thurmond, in his official capacity as State Superintendent for CDE, via mail fraud through interstate commerce, assured the U.S. DOE, between January of 2019 and July of 2019, that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." **Exhibits 25-26.**

513. Upon information and belief, Defendant Chris Essman, in his official capacity as an employee for the California Department of Education, via mail fraud through interstate commerce, made assurances to the U.S. DOE, between January of 2019 and July of 2019, that CDE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 27.**

514. In addition, upon information and belief, Chris Essman, in his official capacity as an employee of CDE, via mail fraud through interstate commerce, made assurances to the U.S. DOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibit 27.**

515. In addition, upon information and belief, Defendant Chris Essman, in his official capacity as an employee of CDE, via mail fraud through interstate commerce, assured the U.S. DOE, between January of 2019 and July of 2019, that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." **Exhibit 27.**

516. Upon information and belief, in August of 2019, CDE collected IDEA Part B funds from the U.S. DOE via wire fraud through interstate commerce.  Exhibit 25.

517. In 2019, the U.S. DOE gave California $1,289,886,774.00 in IDEA Part B Funds.  **Exhibit 25.**

518. In addition, upon information and belief, Defendant Tony Thurmond, in his official capacity as State Superintendent for CDE, made assurances, via mail fraud through interstate commerce, to the US DOE, between January of 2020 and July of 2020, that the school district defendants had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act."  **Exhibit 28.**

519. In addition, upon information and belief, Defendant Tony Thurmond, in his official capacity as State Superintendent for CDE, made assurances, via mail fraud through interstate commerce, to the U.S. DOE, between January of 2020 and July of 2020, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibit 28.**

520. In addition, upon information and belief, Defendant Tony Thurmond, in his

official capacity as State Superintendent for CDE, assured the U.S. DOE, via mail fraud through interstate commerce, between January of 2020 and July of 2020, that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." **Exhibit 28.**

521. In addition, upon information and belief, Defendant Chris Essman, in his official capacity as an employee of CDE, made assurances, via mail fraud through interstate commerce, to the US DOE, between January of 2020 and July of 2020, that CDE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 28.**

522. In addition, upon information and belief, Defendant Essman, in his official capacity as an employee of CDE, made assurances, via mail fraud through interstate commerce, to the U.S. DOE, between January of 2020 and July of 2020, that: "[c]hildren with disabilities and their parents are afforded the

procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibit 28.**

523. In addition, upon information and belief, Defendant Essman, in his official capacity as an employee for CDE, assured the U.S. DOE, via mail fraud through interstate commerce, between January of 2020 and July of 2020, that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." **Exhibit 28.**

524. Upon information and belief, CDE collected the IDEA Part B funds from the U.S. DOE via wire fraud through interstate commerce.

525. In 2020, the U.S. DOE gave California an estimated $1,327,800,000.00 in IDEA Part B Funds. **Exhibit 28.**

526. In 2021, the U.S. DOE gave California an estimated $1,336,802,576.00 in IDEA Part B Funds. **Exhibit 28.**

First Amended Complaint                                    Case No. 21-7333

527. Upon information and belief, CDE received IDEA Part B funds from the U.S. DOE and then distributed the funds to the LEAs by wire.

528. Upon information and belief, the LEAs used the IDEA Part B funds for unlawful purposes.

529. In furtherance of this scheme to defraud, and with the purpose of executing this scheme to defraud, Defendants Tony Thurmond and Chris Essman used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C.§ 1343. Upon information and belief, these interstate wires were collected by Defendant Tony Thurmond and Chris Essman in the years 2019, 2020 and are continuing to be collected to further their objective to obtain federal funds under the false pretense that the CDE protected plaintiffs' procedural and substantive rights under IDEA during the closures of the school district defendants.

530. Each use of wire communications in connection with the scheme to defraud constitutes the offense of wire fraud as prohibited by 18 U.S.C. § 1343.

531. Contrary to the individual defendants' assurances, CDE did not give plaintiffs prior written notice of the Named LEAs' closure of schools and alteration of

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services during the COVID-19 pandemic.

532. Contrary to the individual defendants' assurances, the CDE did not ensure that the parents of each child with a disability were included as members of an IEP Team that made decisions on the educational placement of their children during the COVID-19 pandemic.

533. Contrary to the individual defendants' assurances, the CDE did not maintain plaintiffs' pendency placement through in-person instruction during the COVID-19 pandemic.

534. Contrary to the individual defendants' assurances, the CDE did not reconvene IEP Team Meetings to change plaintiffs' IEPs to provide for complete virtual instruction and services during the COVID-19 pandemic.

<u>Defendant Andrew G. Alvarado for the Fresno Central Unified Public School District ("FCUSD")</u>

535. Upon information and belief, Defendant Andrew G. Alvarado, in his official capacity as Superintendent of FCUSD, made assurances to the CDE, between January of 2019 and July of 2019, that FCUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

536. In addition, upon information and belief, Defendant Andrew G. Alvarado, in

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

his official capacity as Superintendent of FCUSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

537. In addition, upon information and belief, Andrew G. Alvarado, in his official capacity as current Superintendent of FCUSD, made assurances to the CDE, between January of 2020 and July of 2020, that FCUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

538. In addition, upon information and belief, Andrew G. Alvarado, in his official capacity as current Superintendent of FCUSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

539. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Andrew G. Alvarado used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Andrew G. Alvarado used these interstate wires in 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that the FCUSD protected plaintiffs' procedural and substantive rights under IDEA during the closure of Fresno Central Unified Public Schools.

### Defendant Mark W. McLaughlin, Ed.D. for the Conejo Valley Unified School District ("CVUSD")

540. Upon information and belief, Defendant Mark W. McLaughlin, Ed.D., in his official capacity as Superintendent of CVUSD, made assurances to the CDE, between January of 2019 and July of 2019, that CVUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

541. In addition, upon information and belief, Defendant Mark W. McLaughlin, Ed.D., in his official capacity as Superintendent of CVUSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

FIRST AMENDED COMPLAINT                                        CASE NO. 21-7333

542. In addition, upon information and belief, Mark W. McLaughlin, Ed.D., in his official capacity as current Superintendent of CVUSD, made assurances to the CDE, between January of 2020 and July of 2020, that CVUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

543. In addition, upon information and belief, Mark W. McLaughlin, Ed.D., in his official capacity as current Superintendent of CVUSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

544. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Mark W. McLaughlin, Ed.D. used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Mark W. McLaughlin, Ed.D., used these interstate wires in 2019, 2020, and continues to use them to further his objective to obtain federal funds under the false pretense that the CVUSD

protected plaintiffs' procedural and substantive rights under IDEA during its closure.

Defendant Austin Beutner for the Los Angeles Unified School District ("LAUSD")

545. Upon information and belief, Defendant Austin Beutner, in his official capacity as Superintendent of LAUSD, made assurances to the CDE, between January of 2019 and July of 2019, that LAUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

546. In addition, upon information and belief, Defendant Austin Beutner, in his official capacity as Superintendent of LAUSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

547. In addition, upon information and belief, Austin Beutner, in his official capacity as current Superintendent of LAUSD, made assurances to the CDE, between January of 2020 and July of 2020, that LAUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

115

548. In addition, upon information and belief, Austin Beutner, in his official capacity as current Superintendent of LAUSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

549. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Austin Beutner used interstate wires to defraud plaintiffs of their rights under IDEA.   The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.   Defendant Austin Beutner used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that the LAUSD protected plaintiffs' procedural and substantive rights under IDEA during its closure.

Dr. Marian Kim-Phelps for the Poway Unified School District ("PUSD")

550. Upon information and belief, Dr. Marian Kim-Phelps, in her official capacity as Superintendent of PUSD, made assurances to the CDE, between January of 2019 and July of 2019, that PUSD had "policies and procedures in place as

First Amended Complaint

Case No. 21-7333

116

required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-28**.

551. In addition, upon information and belief, Defendant Kim-Phelps, in her official capacity as Superintendent of PUSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-28**

552. In addition, upon information and belief, Dr. Kim-Phelps, in her official capacity as Superintendent of PUSD, made assurances to the CDE, between January of 2020 and July of 2020, that PUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

553. In addition, upon information and belief, Dr. Kim-Phelps, in her official capacity as the Superintendent of PUSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

554. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Kim-Phelps, Superintendent of PUSD, used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant used these interstate wires in 2019 and 2020 and continues to use them to further her objective to obtain federal funds under the false pretense that the PUSD protected plaintiffs' procedural and substantive rights under IDEA during the closure of its schools.

<u>Defendants Robert Haley and Lucille Lynch for the San Dieguito Union High School District ("SDUHS")</u>

555. Upon information and belief, Defendant Robert Haley, in his official capacity as Superintendent of SDUHS, made assurances to the CDE, between January of 2019 and July of 2019, that SDUHS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

556. In addition, upon information and belief, Defendant Robert Haley, in his official capacity as Superintendent of SDUHS, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities

FIRST AMENDED COMPLAINT                         CASE NO. 21-7333

and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

557. In addition, upon information and belief, Robert Haley, in his official capacity as Superintendent of SDUHS, made assurances to the CDE, between January of 2020 and July of 2020, that SDUHS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

558. In addition, upon information and belief, Robert Haley, in his official capacity as the Superintendent of SDUHS, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

559. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Robert Haley as Superintendent of SDUHS through April 30, 2021, and Lucille Lynch, the current Superintendent of SDUHS, used interstate wires to defraud plaintiffs of their rights under IDEA. The interstate wires consisted of electronic messages and the collection of

federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343. Defendants used these interstate wires in 2019 and 2020 and continue to use them to further their objective to obtain federal funds under the false pretense that SDUHS protected plaintiffs' procedural and substantive rights under IDEA during the closure of its schools.

Defendant David Olney for the Hesperia Unified Public School District ("HPS")

560. Upon information and belief, Defendant David Olney, in his official capacity as Superintendent of HPS, made assurances to the CDE, between January of 2019 and July of 2019, that HPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

561. In addition, upon information and belief, Defendant David Olney, in his official capacity as Superintendent of HPS, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

562. In addition, upon information and belief, David Olney, in his official capacity

as current Superintendent of HPS, made assurances to the CDE, between January of 2020 and July of 2020, that HPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

563. In addition, upon information and belief, David Olney, in his official capacity as current Superintendent of HPS, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

564. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant David Olney used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant David Olney used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that the HPS protected plaintiffs' procedural and substantive rights under IDEA during the closure of its schools.

<u>Dr. Roxane Fuentes for Berryessa Unified School District ("BUSD")</u>

565. Upon information and belief, Dr. Roxane Fuentes, in her official capacity as current Superintendent of BUSD, assured the CDE, between January of 2019 and July of 2019, that BUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

566. In addition, upon information and belief, Dr. Roxane Fuentes, in her official capacity as current Superintendent of BUSD, assured the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

567. In addition, upon information and belief, Dr. Roxane Fuentes, in her official capacity as current Superintendent of BUSD, made assurances to the CDE, between January of 2020 and July of 2020, that BUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

568. In addition, upon information and belief, Dr. Roxane Fuentes, in her official capacity as current Superintendent of BUSD, made assurances to the CDE,

between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *See id*.

569. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Fuentes used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Fuentes used the interstate wires in 2019 and 2020 and continues to use them to further her objective to obtain federal funds under the false pretense that plaintiffs' procedural and substantive rights under IDEA were protected by BUSD during its closure.

<u>Defendant Kirsten M. Vitale Brulte for the Capistrano Unified Public School District ("CUSD")</u>

570. Upon information and belief, Defendant Kirsten M. Vitale Brulte, in her official capacity as Superintendent of CUSD, made assurances to the CDE, between January of 2019 and July of 2019, that CUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

571. In addition, upon information and belief, Defendant Kirsten M. Vitale Brulte, in her official capacity as Superintendent of CUSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

572. In addition, upon information and belief, Kirsten M. Vitale Brulte, in her official capacity as current Superintendent of CUSD, made assurances to the CDE, between January of 2020 and July of 2020, that CUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

573. In addition, upon information and belief, Kirsten M. Vitale Brulte, in her official capacity as current Superintendent of CUSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

574. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Kirsten M. Vitale Brulte used interstate wires

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Brulte used these interstate wires in 2019 and 2020 and continues to use them to further her objective to obtain federal funds under the false pretense that the CUSD protected plaintiffs' procedural and substantive rights under IDEA during IDEA the closure of its schools.

 Defendant Kent Kern for the San Juan Unified School District ("SJSD")

575. Upon information and belief, Defendant Kent Kern, in his official capacity as Superintendent of SJSD, made assurances to the CDE, between January of 2019 and July of 2019, that SJSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 25-27**.

576. In addition, upon information and belief, Defendant Kent Kern, in his official capacity as Superintendent of SJSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§

300.121." **Exhibit 25-27.**

577. In addition, upon information and belief, Kent Kern, in his official capacity as current Superintendent of SJSD, made assurances to the CDE, between January of 2020 and July of 2020, that SJSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

578. In addition, upon information and belief, Kent Kern, in his official capacity as current Superintendent of SJSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

579. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Kent Kern used interstate wires to defraud plaintiffs of their rights under IDEA. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343. Defendant Kent Kern used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal

funds under the false pretense that the SJSD protected plaintiffs' procedural and substantive rights under IDEA during the closure of its schools.

<u>Defendant Dr. Matt Hill for Burbank Unified Public School District ("BSD")</u>

580. Upon information and belief, Defendant Dr. Matt Hill, in his official capacity as Superintendent of BSD, made assurances to the CDE, between January of 2019 and July of 2019, that BSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

581. In addition, upon information and belief, Defendant Dr. Matt Hill, in his official capacity as Superintendent of BSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

582. In addition, upon information and belief, Dr. Matt Hill, in his official capacity as current Superintendent of BSD, made assurances to the CDE, between January of 2020 and July of 2020, that BSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

FIRST AMENDED COMPLAINT                              CASE NO. 21-7333

583. In addition, upon information and belief, Dr. Matt Hill, in his official capacity as current Superintendent of BSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

584. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Hill used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Hill used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that plaintiffs' procedural and substantive rights under IDEA were protected during the closure of Burbank Unified Public Schools.

Defendant Matthew Gulbrandsen for the Live Oak Unified School District ("LOSD")

585. Upon information and belief, Defendant Matthew Gulbrandsen, in his official capacity as Superintendent of LOSD, made assurances to the CDE, between January of 2019 and July of 2019, that LOSD had "policies and procedures in

place as required by Part B of the Individuals with Disabilities Education Act."

**Exhibits 25-27.**

586. In addition, upon information and belief, Defendant Matthew Gulbrandsen, in his official capacity as Superintendent of LOSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

587. In addition, upon information and belief, Matthew Gulbrandsen, in his official capacity as current Superintendent of LOSD, made assurances to the CDE, between January of 2020 and July of 2020, that LOSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

588. In addition, upon information and belief, Matthew Gulbrandsen, in his official capacity as current Superintendent of LOSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Matthew Gulbrandsen used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343. 589. Defendant Matthew Gulbrandsen used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that plaintiffs' procedural and substantive rights under IDEA were protected during the closure of Live Oak Unified School District (LOSD).

Defendant Kelly Dextraze for Lincoln Unified School District("LUSD")

590. Upon information and belief, Defendant Kelly Dextraze, in her official capacity as Superintendent of the LUSD, made assurances to the CDE, between January of 2019 and July of 2019, that LUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

591. In addition, upon information and belief, Defendant Dextraze, in her official capacity as Superintendent of LUSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their

FIRST AMENDED COMPLAINT                                    CASE NO. 21-7333

parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

592. In addition, upon information and belief, Dextraze, in her official capacity as current Superintendent of LUSD, made assurances to the CDE, between January of 2020 and July of 2020, that LUSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29**.

593. In addition, upon information and belief, Dextraze, in her official capacity as current Superintendent of LUSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

594. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Dextraze used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of

18 U.S.C. § 1343. Defendant Dextraze used these interstate wires in 2019 and 2020 and continues to use them to further her objective to obtain federal funds under the false pretense that plaintiffs' procedural and substantive rights under IDEA were protected during the closure of LUSD.

Defendant Troy A. Brown for San Joaquin County Office of Education ("SJCOE")

595. Upon information and belief, Defendant Troy A. Brown, in his official capacity as Superintendent of the SJCOE, made assurances to the CDE, between January of 2019 and July of 2019, that SJCOE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

596. In addition, upon information and belief, Defendant Brown, in his official capacity as Superintendent of SJCOE, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

597. In addition, upon information and belief, Brown, in his official capacity as current Superintendent of SJCOE, made assurances to the CDE, between January of 2020 and July of 2020, that SJCOE had "policies and procedures

in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

598. In addition, upon information and belief, Brown, in his official capacity as current Superintendent of SJCOE, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

599. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Brown used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Brown used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that plaintiffs' procedural and substantive rights under IDEA were protected during the closure of SJCOE.

Defendant Cindy Marten for the San Diego Unified School District ("SDSD")

600. Upon information and belief, Defendant Cindy Marten, in her official capacity

as Superintendent of SDSD, made assurances to the CDE, between January of 2019 and July of 2019, that SDSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

601. In addition, upon information and belief, Defendant Cindy Marten, in her official capacity as former Superintendent of SDSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

602. In addition, upon information and belief, Cindy Marten, in her official capacity as former Superintendent of SDSD, made assurances to the CDE, between January of 2020 and July of 2020, that SDSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

603. In addition, upon information and belief, Cindy Marten, in her official capacity as former Superintendent of SDSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

134

through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

604. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Cindy Marten used interstate wires to defraud plaintiffs of their rights under IDEA. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343. Defendant Cindy Marten used these interstate wires in 2019 and 2020 and continues to use them to further her objective to obtain federal funds under the false pretense that plaintiffs' procedural and substantive rights under IDEA were protected during the closure of the San Diego Unified School District (SDSD).

### Defendant Dr. Lamont A. Jackson for the San Diego Unified School District ("SDSD")

605. Upon information and belief, Defendant Dr. Lamont A. Jackson, in his official capacity as current Superintendent of SDSD, made assurances to the CDE, between January of 2021 and July of 2021, that SDSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

FIRST AMENDED COMPLAINT

CASE NO. 21-7333

606. Upon information and belief, Defendant Cindy Marten, in her official capacity as current Superintendent of SDSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

607. In addition, upon information and belief, Dr. Lamont A. Jackson, in his official capacity as current Superintendent of SDSD, made assurances to the CDE, between January of 2021 and July of 2021, that SDSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

608. In addition, upon information and belief, Dr. Lamont A. Jackson, in his official capacity as Superintendent of SDSD, made assurances to the CDE, between January of 2021 and July of 2021 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *See id*.

609. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Dr. Lamont A. Jackson used interstate wires to

defraud plaintiffs of their rights under IDEA. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343. Defendant Dr. Lamont A. Jackson used these interstate wires in 2021 and continues to use them to further his objective to obtain federal funds under the false pretense that plaintiffs' procedural and substantive rights under IDEA were protected during the closure of the San Diego Unified School District (SDSD).

<u>Patrick Kelley for the Murrieta Valley Unified School District ("MVSD")</u>

610. Upon information and belief, Defendant Patrick Kelley, in his official capacity as Superintendent of MVSD, made assurances to the CDE, between January of 2019 and July of 2019, that MVSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

611. In addition, upon information and belief, Defendant Patrick Kelley, in his official capacity as Superintendent of MVSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6);

34 CFR§ 300.121." **Exhibits 25-27.**

612. In addition, upon information and belief, Patrick Kelley, in his official capacity as current Superintendent of MVSD, made assurances to the CDE, between January of 2020 and July of 2020, that MVSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

613. In addition, upon information and belief, Patrick Kelley, in his official capacity as current Superintendent of MVSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

614. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Patrick Kelley used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Patrick Kelley used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain

federal funds under the false pretense that the MVSD protected plaintiffs' procedural and substantive rights under IDEA during IDEA the closure of its schools.

### Defendant Brian McDonald, Ed.D. for the Pasadena Unified School District ("PSD")

615. Upon information and belief, Defendant Brian McDonald, Ed.D., in his official capacity as Superintendent of PSD, made assurances to the CDE, between January of 2019 and July of 2019, that PSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27.**

616. In addition, upon information and belief, Defendant Brian McDonald, Ed.D., in his official capacity as Superintendent of PSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

617. In addition, upon information and belief, Brian McDonald, Ed.D., in his official capacity as current Superintendent of PSD, made assurances to the CDE, between January of 2020 and July of 2020, that PSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities

FIRST AMENDED COMPLAINT                              CASE NO. 21-7333

Education Act." **Exhibits 25, 28, 29.**

618. In addition, upon information and belief, Brian McDonald, Ed.D., in his official capacity as current Superintendent of PSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

619. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud Defendant Brian McDonald, Ed.D. used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Brian McDonald, Ed.D. used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that plaintiffs' procedural and substantive rights under IDEA were protected by IDEA the PSD during the closure of its schools.

Defendant Norm Enfield for the Chino Valley Unified School District ("CVSD")

620. Upon information and belief, Defendant Norm Enfield, in his official capacity

as Superintendent of CVSD, made assurances to the CDE, between January of 2019 and July of 2019, that CVSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25-27**.

621. In addition, upon information and belief, Defendant Norm Enfield, in his official capacity as Superintendent of CVSD, made assurances to the CDE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25-27.**

622. In addition, upon information and belief, Norm Enfield, in his official capacity as current Superintendent of CVSD, made assurances to the CDE, between January of 2020 and July of 2020, that CVSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

623. In addition, upon information and belief, Norm Enfield, in his official capacity as current Superintendent of CVSD, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400

First Amended Complaint                                   Case No. 21-7333

through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

624. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Norm Enfield used interstate wires to defraud plaintiffs of their rights under IDEA.   The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.  Defendant Norm Enfield used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that the CVSD protected plaintiffs' procedural and substantive rights under IDEA during its closure.

### Defendant Dr. Doug Kimberly for the Lake Elsinore Unified Public School District ("LEPS")

625. Upon information and belief, Defendant Dr. Doug Kimberly, in his official capacity as Superintendent of LEPS, made assurances to the CDE, between January of 2019 and July of 2019, that LEPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 25-27.**

626. In addition, upon information and belief, Defendant Dr. Doug Kimberly, in his official capacity as Superintendent of LEPS, made assurances to the CDE,

between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibit 25-27.**

627. In addition, upon information and belief, Dr. Doug Kimberly, in his official capacity as current Superintendent of LEPS, made assurances to the CDE, between January of 2020 and July of 2020, that LEPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibits 25, 28, 29.**

628. In addition, upon information and belief, Dr. Doug Kimberly, in his official capacity as current Superintendent of LEPS, made assurances to the CDE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." **Exhibits 25, 28, 29.**

629. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Dr. Doug Kimberly used interstate wires to defraud plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the

First Amended Complaint                                   Case No. 21-7333

interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.   Defendant Dr. Doug Kimberly used these interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that the LESD protected plaintiffs' procedural and substantive rights under IDEA during IDEA the closure of its schools.

Pattern of Racketeering Activity

630. The course of conduct engaged in by each individual RICO defendant constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5).

631. The individual defendants' predicate acts have "similar purposes, results, participants, or methods of commission or are related to the affairs of their enterprises." *See* **Exhibits 25-29**.

632. By allowing Defendants' conduct to continue, Defendant Governor Newsom remained complicit in the scheme.

633. All predicate acts had the same purpose of defrauding plaintiffs of IDEA Funds.

633. The continuity of the pattern of racketeering activity constitutes closed-ended

continuity as it occurred over a substantial period, from about March 2020 to the present, as Defendants herein have all reapplied for IDEA funding for the 2021 school year.

634. There is a threat of continued activity as each individual defendant has repeatedly engaged in illegal and illicit activities.  Engaging in the pattern of racketeering as set forth herein is the regular way the individual defendants conduct the affairs of their respective associated association, in fact, enterprises.  Because each enterprise has been in existence for many years, and the seeking of federal funding by these individual defendants on behalf of their associated association in fact enterprises will continue indefinitely, each individual defendant, through the operation of his or her associated association in fact enterprise, remains a threat to others and their racketeering activity meets the open-ended continuity test.

<u>Injury</u>

635. As a direct and proximate result of the individual defendants' predicate acts in furtherance of violating 18 U.S.C. § 1962(a), plaintiffs have been and are continuing to be deprived of their rights under IDEA, as set forth more fully above.

636. As a direct and proximate result thereof, plaintiffs suffered harm, including

FIRST AMENDED COMPLAINT                                        CASE NO. 21-7333

significant regressions in skills and loss of competencies.

## PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully request that the Court:

1.    Assert jurisdiction over this matter;

2.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2);

3.    Issue a judgment declaring that the class members' status quo, pendency placement is in-person instruction and services;

4.    Issue a judgment declaring that the unilateral change in the educational placement of the Plaintiffs for more than ten cumulative days in the 2019-2020 and 2020-2021 school years, respectively, violated the procedural safeguards and rights of Plaintiffs under IDEA and discriminated against plaintiffs under IDEA, the California Education Code, § 504, the ADA, and § 1983;

5.    Issue a judgment declaring that the CDE failed to monitor and provide proper oversight and resources to the Named LEAs and other similarly situated LEAs during the COVID-19 pandemic as required under IDEA and the California Education Code;

6.    Order Defendants herein to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members, thereby enjoining Defendants and other similarly situated LEAs from unilaterally

FIRST AMENDED COMPLAINT                                   CASE NO. 21-7333

changing the Plaintiffs' educational placement for more than ten cumulative days in the 2021-2022 school year, and in subsequent school years, in the event of any future school closures;

7. Assign a Special Monitor to:   a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;   b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; and c) ensure the expert recommendations are included in writing in the class members' IEP documents;

8. Require Defendants herein to comply with IDEA, the California Education Code, the ADA, § 504, and § 1983 in the event of any future school closures;

9. Assign a RICO Special Monitor to:   1) oversee the completion of an independent audit of defendants' expenditures of their IDEA Part B Funds from March of 2020 to the present; b) oversee the defendants' expenditures of their IDEA Part B Funds for the 2021-2022 school year to ensure defendants spend IDEA Part B Funds for instruction and/or services for students with

FIRST AMENDED COMPLAINT                         CASE NO. 21-7333

disabilities under IDEA; and c) ensure any IDEA Part B Funds that defendants spent on items other than instruction and/or services for students with disabilities under IDEA from March of 2020 through the present are reimbursed to a monitored account to be spent only upon review and approval by the RICO Special Monitor;

10. Grant Plaintiffs, all class members, an award of compensatory education as appropriate; grant plaintiffs, all class members, an award of compensatory education in the form of an additional year of education, or more, for each school year, and/or portion thereof, plaintiffs received remote or hybrid education; grant plaintiffs, all class members,  an award of compensatory education, as pendency, in the form of a pendency voucher, or pendency fund, to address and/or compensate plaintiffs', class members', regressions and/or loss of competencies;

11. Declare plaintiffs to be the "substantially prevailing party" (for purposes of IDEA's fee-shifting provision);

12. Award Plaintiffs, all class members, nominal damages;

12. Grant leave to plaintiffs to submit a statutory fee application;

13. Allow Plaintiffs to seek punitive damages for the claims herein, except for the RICO-related claims, to the extent that such damages are not barred by federal

FIRST AMENDED COMPLAINT                                  CASE NO. 21-7333

148

and state law.

14. Direct defendants to pay for the costs and expenses for maintaining this action, including reasonable attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B);

15. Award attorneys' fees pursuant to the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1988;

15. Retain jurisdiction over this action until this Court is satisfied that the systemic violations of the laws and regulations complained of herein have been rectified; and

16. Grant such other or further relief that the Court may deem just and proper.

Respectfully submitted,

/s/Charlotte G. Carne
Charlotte G. Carne (198831)
Attorney for Plaintiffs
Brain Injury Rights Group
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

FIRST AMENDED COMPLAINT                                        CASE NO. 21-7333

# EXHIBITS

| 1 | A.C. 3/30/20 IEP, ECF Doc. 1-1 |
|----|----|
| 2 | A.R. 11/15/19 IEP, ECF Doc. 1-2 |
| 3 | C.A. 9/13/19 IEP, ECF Doc. 1-3 |
| 4 | D.R.10/22/19 IEP, ECF Doc. 1-4 |
| 5 | D.M. 3/4/20 IEP, ECF Doc. 1-5 |
| 6 | D.N. 1/14/20 IEP, ECF Doc. 1-6 |
| 7 | L.B 12/13/19 IEP, ECF Doc. 1-7 |
| 8 | D.B. 2/6/20 IEP, ECF Doc. 1-8 |
| 9 | E.W.10/31/19 IEP, ECF Doc. 1-9 |
| 10 | E.G. 10/31/19 IEP, ECF Doc. 1-10 |
| 11 | I.W. 4/15/19 IEP, ECF Doc. 2-1 |
| 12 | J.B. 11/15/19 IEP, ECF Doc. 2-2 |
| 13 | J.D.M. 2/13/20 IEP, ECF Doc. 2-3 |
| 14 | K.F. 10/30/19 IEP, ECF Doc. 2-4 |
| 15 | L.S. 1/27/20 IEP, ECF Doc. 2-5 |
| 16 | L.L. 1/7/20 IEP, ECF Doc. 3-1 |
| 17 | M.R.10/3/19 IEP, ECF Doc. 3-2 |
| 18 | R.K. 10/16/19 IEP, ECF Doc. 4-1 |
| 19 | S.G. 10/17/19 IEP, ECF Doc. 5-1 |
| 20 | S.M. 3/4/20 IEP, ECF Doc. 5-2 |
| 21 | March 12, 2020, Supplemental Fact Sheet, ECF Doc. 5-3 |
| 22 | March 2020 Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak, ECF Doc. 5-4 |
| 23 | March 13, 2020, Letter, ECF Doc. 5-5 |
| 24 | July 17, 2020, Guidance, ECF Doc. 5-6 |
| 25 | July 1, 2020 Letter from the U.S. DOE to Tony Thurmond enclosing DOE Funds for States Formula, ECF Doc. 5-7 |
| 26 | 2019 IDEA Part B Application, ECF Doc. 5-8 |
| 27 | 2019 State Application Memo by Chris |

FIRST AMENDED COMPLAINT                    CASE NO. 21-7333

| | Essman, ECF Doc. 5-9 |
|---|---|
| 28 | 2020 IDEA Part B Application, ECF Doc. 5-10 |
| 29 | 2020 State Application Memo by Chris Essman, ECF Doc. 5-11 |

FIRST AMENDED COMPLAINT                    CASE No. 21-7333

DEMAND FOR JURY TRIAL

Plaintiffs, Maria Alvarez Garcia, Marina Rizzo, Janine Angel, Tamara Lowder, Michael Martin, Shushanik Khachaturian, Erin Bebereia, Leanna Wasco, Jessica Granados, Dana West, Hannah Bell, Jesse W. McFaddin, Michele Florentz, Kerry Sarner, Yvonne Chavez-Lombardi, Michelle Radich, Miranda Keck, Tina Gunn, and Megan Meier, individually and on behalf of their special needs children (collectively referred to as "Plaintiffs"), hereby demand(s) a trial by jury.

/s/  *Charlotte G. Carne*
*Charlotte G. Carne*
*charlotte@pabilaw.org*
*Attorney for Plaintiffs*
*Cal Bar No. 198831*
*Brain Injury Rights Group*
*300 East 95th Street, Suite 130*
*New York, NY 10128*
*(646) 850-5035*

FIRST AMENDED COMPLAINT                              CASE NO. 21-7333

152

1

2

3

4

## California School District Superintendents & Complaint Abbreviations

5

1. CALIFORNIA DEPARTMENT OF EDUCATION       CDE
   TONY THURMOND

6

7

2. BERRYESSA UNION PUBLIC SCHOOL DISTRICT     BUESD
   DR. ROXANE FUENTES

8

9

3. BURBANK UNIFIED PUBLIC SCHOOL DISTRICT     BUSD
   DR. MATT HILL

10

4. CAPISTRANO UNIFIED SCHOOL DISTRICT      CSD
   KIRSTEN M. VITALE BRULTE

11

12

5. CENTRAL UNIFIED SCHOOL DISTRICT       CUSD
   ANDREW G. ALVARADO

13

14

6. CHINO VALLEY UNIFIED SCHOOL DISTRICT     CVUSD
   NORM ENFIELD, ED.D

15

7. FRESNO CENTRAL UNIFIED SCHOOL DISTRICT   FCUSD
   ANDREW G. ALVARADO

16

17

8. HESPERIA UNIFIED SCHOOL DISTRICT      HPS
   ROXANE FUENTES

18

19

9. LAKE ELSINORE UNIFIED SCHOOL DISTRICT    LESD
   DR. DOUG KIMBERLY

20

10. LINCOLN UNIFIED SCHOOL DISTRICT       LUSD
    KELLY DEXTRAZE

21

22

11. LIVE OAK UNIFIED SCHOOL DISTRICT       LOSD
    MATTHEW GULBRANDSEN

23

24

12. LOS ANGELES UNIFIED SCHOOL DISTRICT    LASD
    AUSTIN BEUTNER

25

13. MURRIETA VALLEY UNIFIED SCHOOL DISTRICT  MVSD
    PATRICK KELLEY

26

27

FIRST AMENDED COMPLAINT           CASE NO. 21-7333

14. PASADENA UNIFIED SCHOOL DISTRICT                          PSD
      BRIAN MCDONALD, ED.D.

15. SAN DIEGO UNIFIED SCHOOL DISTRICT                        SDSD
      DR. LAMONT A. JACKSON
      CINDY MARTEN

16. SAN DIEGUITO UNION HIGH SCHOOL DISTRICT                  SDUHS
      LUCILLE LYNCH

17. SAN JOAQUIN COUNTY OFFICE OF EDUCATION                   SJCE
      DR. TROY A. BROWN

18. SAN JUAN UNIFIED SCHOOL DISTRICT                         SJSD
      KENT KERN

FIRST AMENDED COMPLAINT                          CASE NO. 21-7333