O

# United States District Court
# Central District of California

JANINE ANGEL et al.,

    Plaintiffs,

  v.

CINDY MARTEN et al.,

    Defendants.

Case № 2:21-cv-07333-ODW (PVCx)

**ORDER GRANTING MOTION TO DISMISS [263] AND DENYING AS MOOT MOTION TO DISMISS [272]**

## I. INTRODUCTION

Plaintiff Janine Angel, individually and on behalf of her child C.A., along with several other disabled California public school students ("Student Plaintiffs") and their parents ("Parent Plaintiffs"), bring suit against the California Department of Education, Governor Gavin Newsom, several California school districts, and the school districts' superintendents (collectively, "Defendants"), alleging that Defendants denied the Student Plaintiffs a Free Appropriate Public Education ("FAPE") as required by the federal Individuals with Disabilities Education Act ("IDEA") when Defendants closed schools and transitioned to remote instruction during the COVID-19 pandemic. Defendants move to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (b)(6). (Mot. Dismiss SAC, ECF No. 263.)  Certain, but not all, Defendants separately move to dismiss the claims against

them pursuant to Rule 12(b)(1) on the grounds that those Defendants have settled the claims against them ("Settling Defendants"). (Settling Defs.' Mot. Dismiss, ECF No. 272.) For the reasons that follow, the Court **GRANTS** the former Motion and **DENIES** the latter Motion **AS MOOT**.[1]

## II.    FACTUAL BACKGROUND

The Court first surveys the applicable law and then sets forth Plaintiffs' relevant allegations, accepting all well-pleaded allegations as true for the purpose of Defendants' Rule 12(b)(6) challenge. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### A.    Rights and Safeguards Under the IDEA

The IDEA "confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1066 (9th Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305, 310 (1988)). The "centerpiece" of the IDEA's education delivery system for disabled children is the individualized education program ("IEP"), a written statement tailored to the unique needs of a student with a disability and designed to help the disabled student learn. *Honig*, 484 U.S. at 311 (discussing prior version of IDEA); 20 U.S.C. §§ 1401(14), 1414(d). "[T]he IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig*, 484 U.S. at 311. In order to provide a FAPE, the provision of special education and related services must be made in conformity with each student's IEP. 20 U.S.C. § 1401(9)(D); *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J,* 502 F.3d 811, 823 (9th Cir. 2007) ("[A] material failure to implement an IEP violates the IDEA." (emphasis omitted)). "The IEP must be reviewed and, where necessary, revised at least once a year in order

---

[1] The Court carefully considered the papers filed in connection with the Motions and deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1  to ensure that local agencies tailor the statutorily required [FAPE] to each child's unique
2  needs." *Honig*, 484 U.S. at 311.

3      The IDEA contemplates collaboration between parents and educators in
4  preparing an IEP. 20 U.S.C. § 1414(d)(1)(B); 34 C.F.R. §§ 300.500–537. "[A]ware
5  that schools had all too often denied such children appropriate educations without in
6  any way consulting their parents, Congress repeatedly emphasized throughout the Act
7  the importance and indeed the necessity of parental participation in both the
8  development of the IEP and any subsequent assessments of its effectiveness." *Honig*,
9  484 U.S. at 311. Accordingly, IEPs are "[p]repared at meetings between a
10  representative of the local school district, the child's teacher, the parents or guardians,
11  and, whenever appropriate, the disabled child." *See id.*; 20 U.S.C. § 1414(d)(1)(B);
12  *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 642–43 (9th Cir. 2005).

13      Beyond the initial IEP meeting, the IDEA establishes procedural safeguards that
14  provide parents an opportunity for continued input regarding decisions affecting their
15  child's education and the right to seek review of decisions they find inappropriate.
16  *Honig*, 484 U.S. at 311–12; *see Doug C. v. Haw. Dep't of Educ.*, 720 F.3d 1038, 1044
17  (9th Cir. 2013). One such procedural safeguard is the requirement that an educational
18  agency provide prior written notice when it either initiates or refuses to initiate a change
19  in the child's educational placement. *Honig*, 484 U.S. at 312.

20      Moreover, "[e]ither the child's parents or the local educational authority may
21  bring a complaint to the state educational agency about any matter relating to the IEP
22  or the child's free appropriate public education." *Van Duyn*, 502 F.3d at 818 (citing
23  20 U.S.C. § 1415(b)(6), (7)). "If such a complaint is not otherwise resolved, a due
24  process hearing is held to determine 'whether the child received a free appropriate
25  public education.'" *Id.* (quoting 20 U.S.C. § 1415(f)(3)(E)(i)). "After going through
26  the due process hearing and any other available administrative remedies, an aggrieved
27  party may file a civil action in federal district court." *Id.* (citing 20 U.S.C.
28  § 1415(i)(2)(A)).

Another of the IDEA's safeguards is its "stay-put" provision, which governs the placement of the child during the due process hearing and related judicial proceedings. *Johnson v. Special Educ. Hearing Off.*, 287 F.3d 1176, 1179 (9th Cir. 2002). The stay-put provision directs that:

> [D]uring the pendency of any proceedings conducted pursuant to [§ 1415], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . .

20 U.S.C. § 1415(j). Thus, during the pendency of due process hearings and related proceedings conducted under § 1415, a unilateral change of educational placement violates the IDEA's stay-put provision. *Id.*; *cf. E.M.C. v. Ventura Unified Sch. Dist.*, No. 2:20-cv-09024-SVW (PDx), 2020 WL 7094071, at *4 (C.D. Cal. Oct. 14, 2020). "The purpose of the 'stay put' provision is to strip schools of the 'unilateral authority they had traditionally employed to exclude disabled students . . . from school' and to protect children from any retaliatory action by the agency." *Johnson*, 287 F.3d at 1181 (quoting *Honig*, 484 U.S. at 323).

## B.  IDEA Part B Funds

The special education services required by the IDEA are funded in part by the federal government, by way of IDEA Part B funds. 20 U.S.C. §§ 1411–1413; 34 C.F.R. §§ 300.1–818. Local school districts apply for and receive Part B funds from their state educational agency—in this case, the California Department of Education—which in turn applies for and receives the funds from the federal government. *See* 34 C.F.R. §§ 300.100–230. Each state educational agency, when applying for Part B funds for its school districts, promises the federal government that it will ensure each district receiving federal funds will comply with the IDEA. 34 C.F.R. §§ 300.121, 300.500. The California Department of Education made such assurances to the United States Department of Education for school years 2019–2020, 2020–2021, 2021–2022, and

continuing.   (Second Am. Compl. ("SAC") ¶ 95, ECF No. 258); *see* 20 U.S.C. § 12412(a)(6).

**C.    Plaintiffs**

Each of the Student Plaintiffs in this action is a "qualified individual with a disability" under 42 U.S.C. § 12131(2) and is accordingly entitled to receive special education services under the IDEA. (SAC ¶¶ 85–88.)  This includes the right to an IEP. 20 U.S.C. § 1414(d)(1)(A); (SAC ¶ 89.)  Each Student Plaintiff had an IEP team that included the child's parent, and each Student Plaintiff received an IEP during the 2019–2020 school year.  (SAC ¶¶ 90, 98, 100.)  In preparing IEPs for the Student Plaintiffs, none of the Student Plaintiffs' IEP teams contemplated remote learning.  (*Id.* ¶ 102.)

The profile of Student Plaintiff C.A., the child of named Parent Plaintiff Janine Angel, is illustrative of the Student Plaintiffs in this matter.  (*Id.* ¶¶ 138–142 (C.A.); *see id.* ¶¶ 126–223 (all Student Plaintiffs).)  C.A. has a diagnosis of Autism Spectrum Disorder and is a student in the Los Angeles Unified School District ("LAUSD").  (*Id.* ¶¶ 138–139.)  According to C.A.'s IEP, LAUSD must remove C.A. from the general education setting and provide instruction in a separate classroom for 60% of the school day.  (*Id.* ¶ 140.)

**D.    COVID-19 Pandemic; School Closures**

On March 4, 2020, in response to the COVID-19 global pandemic and as part of efforts to curb the spread of the virus, Governor Newsom declared a State of Emergency within California.  (SAC ¶ 104); *Brach v. Newsom*, 38 F.4th 6, 9 (9th Cir. 2022).  The U.S. Department of Education also issued guidance regarding closing schools to in-person learning.  (SAC ¶ 106.)  As a result of these developments, the Defendant school districts ("District Defendants") closed the doors of schools and ceased offering in-person instruction for all students, including the Student Plaintiffs, and began to offer remote instruction.  (*Id.* ¶¶ 5, 104, 106, 112.)  In so doing, the District Defendants did not provide written notice to the Parent Plaintiffs of any change in their students' educational setting, as contemplated by 20 U.S.C. § 1415(b)(3) and (c)(1).  (*Id.* ¶ 113.)

Similarly, the District Defendants did not obtain the Parent Plaintiffs' consent to move the Student Plaintiffs from in-person learning services to remote learning services. (*Id.* ¶ 23.)

One year later, after the proliferation of COVID-19 vaccines and extensive efforts on the national, state, and local level to curb the spread of the virus, much had changed. In particular:

> California reached a significant benchmark during the 2021 summer holidays, when Governor Newsom announced that over 50% of Californians had received a full course of COVID-19 vaccination treatments. He issued Executive Order N-07-21, which formally rescinded the Executive Order issued at the outset of the pandemic. *See* Cal. Exec. Order N-07-21 (June 11, 2021) (rescinding Cal. Exec. Order N-33-20). As a result, "all restrictions on businesses and activities" derived from that earlier executive order were rescinded, including the State Public Health Officer's March 2020 stay-at-home order. *Id.*
>
> The following month, the State issued updated guidance for the upcoming 2021–2022 school year. The "COVID-19 Public Health Guidance for K-12 Schools in California, 2021–22 School Year" ("2021–22 Guidance") imposes no restrictions on school reopening, recognizes that "[i]n-person schooling is critical to the mental and physical health and development of our students," and is "designed to keep California K-12 schools open for in-person instruction safely during the COVID-19 pandemic."

*Brach*, 38 F.4th at 10.

**E.   Lawsuit**

On September 14, 2021, Plaintiffs brought suit in federal court, setting forth claims against Defendants for (1) violation of IDEA; (2) violation of California Education Code § 56000; (3) violation of the Rehabilitation Act, 29 U.S.C. § 794; (4) violation of Title II of the ADA, 42 U.S.C. § 12101; (5) violation of the Fourteenth Amendment to the U.S. Constitution—equal protection, pursuant to 42 U.S.C. § 1983; (6) violation of the Fourteenth Amendment to the U.S. Constitution—substantive due process, pursuant to 42 U.S.C. § 1983; and (7) violation of the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  (Compl. ¶¶ 425–636, ECF No. 1.) The operative Second Amended Complaint sets forth the same claims; Plaintiffs bring their first six claims against all Defendants, and their seventh claim against the individual Defendants.  (SAC ¶¶ 263–374.)  Plaintiffs assert their claims individually and as a putative class action on behalf of all other disabled students in California's public education system.  (*Id.* ¶¶ 234–262.)

By way of their claims, Plaintiffs allege that, during the COVID-19 pandemic, when Defendants unilaterally closed schools to in-person learning and transitioned to online and other remote learning models, Defendants violated the statutory and constitutional rights of the Student Plaintiffs.  According to Plaintiffs, "[t]he unilateral transition to the distance learning model . . . constitutes a 'change in placement' as defined by the IDEA."  (*Id.* ¶ 275.)  Because the Student Plaintiffs' IEPs do not contemplate remote learning, Plaintiffs allege, the school districts "failed to ensure that qualified students with IEPs . . . received special education services consistent with their IEPs, thereby denying them the FAPE they were entitled to under the IDEA and California [l]aw."  (*Id.* ¶¶ 102, 109.)

Moreover, "Plaintiffs allege that failing to implement all Student-Plaintiffs['] IEPs, as they were created to be implemented, is a systematic violation of the IDEA." (*Id.* ¶ 282.)  In particular, Plaintiffs allege that Defendants systematically violated the IDEA by (1) not providing written notice to the Parent Plaintiffs before unilaterally closing schools; (2) unilaterally changing each student's educational placement; (3) failing to reconvene IEP meetings before the change; and (4) discriminating against the Student Plaintiffs by failing to ensure that they had access to the same educational opportunities as their non-disabled peers.  (*Id.* ¶¶ 283–298.)  Plaintiffs further allege that this same discrimination violated Section 504 of the Rehabilitation Act and the ADA.  (*Id.* ¶¶ 316, 326.)  They also allege two violations of the United States Constitution, namely:

- that the closure of schools had a disparate impact on them, resulting in a violation of the Fourteenth Amendment's guarantee of equal protection, (*Id.* ¶¶ 332–333), and

- that the closures deprived them of their right to an education as guaranteed by the California Constitution, resulting in a violation of the Fourteenth Amendment's guarantee of substantive due process, (*Id.* ¶¶ 341–344).

Finally, Plaintiffs assert a RICO claim, on the theory that Defendants committed mail and wire fraud by making false assurances that Defendants complied with the IDEA during the COVID-19 Pandemic in order to receive IDEA Part B Funding. (*Id.* ¶¶ 347–348.)

The principal relief Plaintiffs seek is:

- a declaration that Defendants' transition "from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against plaintiffs under IDEA, the California Education Code, § 504, the ADA, and § 1983," (SAC, Prayer for Relief ¶ 4);

- a declaration that, "in the event of future and/or prolonged school closures," including closures not related to COVID-19, "'distance learning or [the Homebound Learning Model]' is not appropriate for qualified disabled Students in the State of California," (*id.* ¶ 14);

- a declaration that the California Department of Education "failed to monitor and provide proper oversi[ght] and resources to the [District Defendants] during the COVID-19 [p]andemic as required under IDEA and the California Education Code," (*id.* ¶ 5);

- a declaration that "the class members' pendency placement is in-person instruction and services," (*id.* ¶ 3);

- an injunction ordering Defendants "to comply with the procedural safeguards guaranteed by IDEA for the 2021–2022 school year," (*id.* ¶ 6);

- the assignment of a Special Master to, among other things, "make expert recommendations to the Court regarding compensatory education[2] or pendency payments for the class members to address any regressions and/or loss of competencies" and provide an accounting of Defendants' use of IDEA Part B Funds for the relevant school years, (*id.* ¶ 7); and

- "nominal damages for the Defendants' unlawful conduct related to Defendants' systemic failures under the IDEA," (*id.* ¶ 17).

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). Conversely, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id*.

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039. The court "need not presume the truthfulness of the plaintiff['s] allegations," *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), and may "resolve factual disputes concerning the existence of jurisdiction," *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party

---

[2] "Compensatory education is an equitable remedy that seeks to make up for 'educational services the child should have received in the first place,' and 'aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of IDEA.'" *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) (quoting *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)).

has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

**B.    Rule 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).   A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)— a short and plain statement of the claim—to survive a dismissal motion. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679.  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Ultimately, the factual allegations must be sufficient "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("Leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

## IV.   DISCUSSION

All Defendants move to dismiss the Second Amended Complaint pursuant to Rule of 12(b)(1) on the grounds that Plaintiffs lack standing to pursue their claims and pursuant to Rule 12(b)(6) on the grounds that Plaintiffs fail to state any cause of action. For the reasons that follow, Defendants' Rule 12(b)(1) arguments have merit and provide a basis for dismissal of the entire Second Amended Complaint with prejudice and without leave to amend. Defendants' Rule 12(b)(6) challenge also has merit and provides additional bases for dismissing the Second Amended Complaint. The Court dismisses the entire Second Amended Complaint on these bases, without reaching the bases proffered by the Settling Defendants in the second Motion to Dismiss.[3]

---

[3] In stating the facts of their case, Plaintiffs simply state that "[a] full recitation of facts may be found in the SAC," and they cite generally to the Second Amended Complaint. (Opp'n Mot. Dismiss SAC ("Opp'n") 3, ECF No. 276-1.) More generally, the Court could locate exactly one pinpoint citation to the operative pleading in the entirety of Plaintiffs' brief. (*See* Opp'n 25:11–12.) Given that Plaintiffs' task with the Opposition brief is to demonstrate to the Court that the operative pleading contains sufficient allegations to survive a pleading challenge, the dearth of citations to the Second Amended Complaint should not go unremarked. The practice violates the principle that propositions in memoranda must be backed by pinpoint citations to the record or to case law, as appropriate. It also obscures the nature of Plaintiffs' claims, making it difficult for the Court to determine if a claim has been stated somewhere in the Second Amended Complaint's four-hundred-some paragraphs. Moreover, the Opposition violates Central District of California Local Rule 11-8 regarding tables of authorities, despite the fact that the Court has pointed out this very violation in prior briefs Plaintiffs filed. (*See* Order Striking Opp'n, ECF No. 274.) While today's dismissal of the Second Amended Complaint is not based solely on any of the foregoing procedural errors, the Court nevertheless notes

**A.      Rule 12(b)(1)**

Defendants argue that the Court must dismiss the case under Rule 12(b)(1) because it is moot and Plaintiffs accordingly lack standing to assert their claims.[4]  (Mot. Dismiss SAC 4.)

*1.    Standing*

Constitutional standing is a prerequisite to a court's subject matter jurisdiction; without standing, a complaint is subject to dismissal pursuant to Rule 12(b)(1).  *Reeves v. Nago*, 535 F. Supp. 3d 943, 951 (D. Haw. 2021) ("When a plaintiff lacks constitutional standing, a suit 'is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit.'" (quoting *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015))).  To establish standing under Article III of the United States Constitution, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see Baker v. Carr*, 369 U.S. 186, 204 (1962) (explaining that standing requires "a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends").

A plaintiff must establish standing for each claim and for each form of relief. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *cf. Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross.").  Here, Plaintiffs request declaratory and injunctive relief.  To establish

---

that these errors are the latest in a substantial succession of procedural errors Plaintiffs' counsel have committed since the outset of this case.  (*See, e.g.*, ECF Nos. 224, 248.)

[4] Defendants request judicial notice of various official documents issued by Governor Newsom, the U.S. Department of Education, and the California Department of Education.  (Req. Judicial Notice, ECF No. 263-2.)  To the extent any of this material is necessary to rule on the Motion, the Court **GRANTS** judicial notice.  To the extent judicial notice is inappropriate, the Court receives these documents as evidence and proceeds with the Rule 12(b)(1) motion as a "factual attack" on subject matter jurisdiction.

standing to seek injunctive relief, plaintiffs must "demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way.'" *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941-JSW, 2019 WL 5690632, at *2 (N.D. Cal. Aug. 26, 2019) (alterations in original) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)); *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1074 (S.D. Cal. 2015) ("For the purposes of requesting injunctive relief, a party does not have standing unless it is able to show a real or immediate threat that it will be wronged again."). Standing to pursue a declaratory judgment requires a similar showing, *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) ("If a plaintiff has standing to seek injunctive relief, the plaintiff also has standing to seek a declaratory judgment."), although there may be circumstances where a plaintiff has standing to pursue an injunction but not a declaration, *see Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010).

       2.    *Mootness*

      A related concept to that of standing is mootness. *Friends of the Earth*, 528 U.S. at 189–91 (2000). "Mootness is a jurisdictional issue, and 'federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists.'" *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 719 (D. Ariz. 2020) (quoting *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003)).

      "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Clark*, 259 F.3d at 1011 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). The burden of persuasion lies with the party asserting mootness. *Id.*

3.    *Application*

Here, the relief Plaintiffs seek is principally declaratory and injunctive in nature. (*See* FAC, Prayer for Relief.)  By Plaintiffs' own concession, "Plaintiffs are not seeking monetary damages under . . . any . . . cause of action; only nominal, declaratory, and injunctive relief." (Opp'n 27.)  This concession is fatal to Plaintiffs' standing because it is not plausible that a similar pandemic situation will happen again in the future.  In other words, subsequent events have "made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189.  Thus, Plaintiffs' request for declaratory and injunctive relief is moot.

Framing this conclusion in terms of standing, at this point the Court cannot redress any harm Plaintiffs allegedly suffered with a mere injunction or declaration. Schools in California have long since opened after their initial closures during the early days of the COVID-19 pandemic. *Brach*, 38 F.4th at 10; *Martinez v. Newsom*, 46 F.4th 965, 972 (9th Cir. 2022).  Plaintiffs here do not plausibly allege that schools are likely to close their doors to in-person learning again, either due to COVID-19 or for any other reason.  Thus, Plaintiffs seek a declaration or injunction based on a past set of circumstances that does not threaten to repeat itself.  Such a declaration would have no actual effect on the legal rights of any Plaintiff and would do nothing to redress any of their alleged injuries beyond providing an advisory opinion about whether past conduct was unlawful.

Recent case law confirms that the mere concern that schools will close again is speculative and is insufficient to give a party standing to pursue declaratory or injunctive relief regarding COVID-19-related closures of schools.  In *Martinez*, the plaintiffs, which included disabled students attending California public schools, alleged that their "districts failed to adequately accommodate special needs students after the transition to remote instruction, thereby denying them—and every other special needs student in the state—a FAPE."  46 F.4th at 969.  Similarly, in *Brach*, the plaintiffs asserted that the State of California interfered with their constitutional right to a public

education when it "ordered schools to suspend in-person instruction in 2020 and early 2021, at a time when California was taking its first steps navigating the largest public health crisis since the Great Influenza Epidemic of 1918." *Brach*, 38 F.4th at 9.  The Ninth Circuit in *Martinez* considered whether the plaintiffs' claims were moot given that California public schools had returned to in-person instruction in the time since the plaintiffs filed their lawsuit (August 2020).  Discussing its opinion in *Brach*, the Ninth Circuit explained:

> Between the summer of 2020, when the suit was filed, and June 2022, when we issued our opinion, much had changed.  As vaccines were distributed and COVID-19 transmission declined, California's school closure orders "expired by their own terms" and schools reopened. *See* [*Brach*, 38 F.4th] at 10–12.  They have remained open for more than a year, despite "the surge of the Omicron COVID-19 variant." *See id.* at 13–14.  In addition, California has "'unequivocally renounce[d]' the use of school closure orders in the future." *Id.* at 13 (quoting *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019) (alter[]ation in original)).  Under these circumstances, we held the plaintiffs' claims were moot. *Id.* at 15.

*Martinez*, 46 F.4th at 972.

Focusing its analysis on the claims against the California Department of Education, the Ninth Circuit in *Martinez* observed that the plaintiffs could not pursue the remedy of compensatory education from the Department, and that, as a result, only injunctive and declaratory relief against the Department was available. *Id.*  But the request for an injunction was moot, and neither the request for a declaratory injunction nor the request for attorneys' fees, "standing alone, c[ould] save Plaintiffs' claims" against the Department. *Id.*  The Ninth Circuit noted that the case was similar to *Brach*, where the plaintiffs "were equally curious to learn whether California's school closures were unlawful, but [the court] held that [it] could not offer an opinion on the matter in

light of the schools' reopening." *Id.* at 973. The *Martinez* plaintiffs' claims against the California Department of Education were moot for the same reason.[5]

As far as the issue of mootness goes, the present case is on all fours with *Martinez* and *Brach*. Angel and her co-Plaintiffs do not seek compensatory education for the Student Plaintiffs. (Opp'n 27; *see generally* SAC, Prayer for Relief.) The only relief they seek is declaratory and injunctive. (SAC, Prayer for Relief ¶¶ 4–15.) These declarations and injunctions are all based on the assumptions that schools are closed and disabled students are not receiving an in-person education, but these assumptions no longer hold true. "The dramatic changes from the early days of the pandemic, including the lifting of all restrictions on in-person learning, have fundamentally altered the character of this dispute." *Brach*, 38 F.5th at 12. Accordingly, "there is no longer any state order for the court to declare unconstitutional or to enjoin. It could not be clearer that this case is moot." *Id.* at 11; *see also Givens v. Newsom*, --- F.3d ---, 2022 WL 4357939, at *3 (E.D. Cal. Sept. 20, 2022) (finding, in September 2022, that plaintiffs lacked standing to seek a declaratory judgment that early-pandemic stay-at-home orders were unconstitutional, while citing *Brach* and noting that the challenged State order was rescinded over a year prior); *cf. Simmons v. Pritzker*, No. 22 CV 0123, 2022 WL 7100611, at *3 (N.D. Ill. Oct. 12, 2022) (finding claims brought in substantially similar case to be moot in light of Illinois schools having reopened).

Plaintiffs appear to argue, without naming the doctrine specifically, that this case falls under the "capable of repetition yet evading review" exception to the mootness doctrine. (Opp'n 12.) This argument fails under *Brach*. The capable of repetition yet evading review "exception is limited to extraordinary cases where '(1) the duration of

---

[5] The relief the plaintiffs in *Martinez* sought included compensatory education, unlike the relief Plaintiffs seek here, which does not. The Ninth Circuit clarified that "Plaintiffs' request for compensatory education means that some of their claims [against some of the other Defendants] are not moot," and that the plaintiffs could, in theory, pursue an injunction, declaratory relief, and attorneys' fees based on the request for compensatory education. *Id.* at 972–73. Ultimately, however, the Ninth Circuit affirmed the dismissal of the plaintiffs' compensatory education claims on other bases. *Id.* at 973–76.

the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again.'" *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 854–55 (9th Cir. 1999) (quoting *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992)).   Here, the exception fails on the second requirement.   The challenged conduct has "long since" ceased, "the State is committed to keeping schools open, and the trajectory of the pandemic has been altered by the introduction of vaccines, including for children, medical evidence of the effect of vaccines, and expanded treatment options." *Brach*, 38 F.4th at 15.   Plaintiffs' concern "that the pandemic *may* worsen and that the State *may* impose further restrictions is speculative" and is insufficient to support an exception to mootness. *Id.*; *see also Givens*, 2022 WL 4357939, at *5 (rejecting capable of repetition yet evading review exception to mootness because "there is no reasonable expectation" that the plaintiffs would be subjected to the allegedly unconstitutional stay-at-home order again).

Plaintiffs argue that *Martinez* is distinguishable because Plaintiffs in this matter plead "several specific systemic violations of the IDEA." (Opp'n 10.)   This argument is not well taken; Plaintiffs fail to explain why variations in pleading practice change the fundamental result that declaratory relief regarding the legality of COVID-19-related school closures is moot given that schools have been open for almost two years now and there is no credible possibility that they will similarly close in the future.

Plaintiffs also argue that *Martinez* does not control because Plaintiffs plead "specific procedural violations and substantive due process violations beyond the IDEA." (Opp'n 11.)   But all of Plaintiffs' alternative causes of action are based on the same alleged wrong and directed toward obtaining the same relief: a declaration that Defendants violated Plaintiffs' statutory or constitutional rights when they transitioned from offering in-person educational services to remote-only services during the early days of the COVID-19 pandemic, and an injunction preventing Defendants from offering remote education to students with IEPs should schools close again in the future.

1  Plaintiffs' request for this type of declaratory relief is moot, no matter the statutory or
2  constitutional framework in which it may be clothed.

3     Beyond these facially unavailing arguments, Plaintiffs make two additional
4  arguments that merit discussion: first, they argue that allegations relating to the IDEA's
5  stay-put provision, 20 U.S.C. § 1415(j), distinguish this case from its predecessors and
6  confer standing.   Second, they argue that their allegations of nominal damages
7  distinguish this case from its predecessors and confer standing.  However, neither of
8  these arguments withstands scrutiny.

9         a.   <u>Allegations related to the stay-put provision do not confer standing.</u>

10    Based on Plaintiffs' Opposition and prior briefings, Plaintiffs appear to argue that
11 by including allegations regarding the IDEA's stay-put provision, 20 U.S.C. § 1415(j),
12 they have distinguished this case from *Martinez* and *Brach*, such that they have standing
13 to prosecute the present action.  (Opp'n 10–11.)

14    This argument does not save the Second Amended Complaint from dismissal
15 because the stay-put allegations themselves are legally deficient.  As discussed, the stay-
16 put procedural safeguard is triggered when (1) proceedings conducted pursuant to
17 20 U.S.C. § 1415 are already pending, and (2) the government changes the educational
18 placement of the child during those already-pending proceedings.  *See, e.g.*, *N.D. v.*
19 *Haw. Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010) ("If the child is moved from
20 the current placement during the [administrative] process, then the deprivation of the
21 right has occurred.").  Alternatively, "[a] parent can request a due process hearing and
22 invoke the stay-put provision when the State proposes to change the child's educational
23 placement."  *Id.* at 1114 (first citing 34 C.F.R. § 300.507; and then citing 34 C.F.R
24 § 300.503(a)).   In all circumstances, however, "[w]here there are no pending
25 proceedings under § 1415, the stay-put provision is inapplicable."  *Bills v. Va. Dep't of*
26 *Educ.*, 605 F. Supp. 3d 744, 754 (W.D. Va. 2022), *appeal filed*, No. 22-1709 (4th Cir.
27 July 6, 2022).

28

1   Here, Plaintiffs do not allege that any proceedings were ever pending under

2   § 1415.  They do not allege that they initiated proceedings, either before or after

3   Defendants closed schools to in-person learning.  Nor do they challenge the Office of

4   Administrative Hearings' denial of a stay-put order requested pursuant to § 1415(j).

5   Indeed, a close inspection of the Second Amended Complaint reveals that Plaintiffs fall

6   short of alleging actual *violations* of the stay-put provision; rather, they allege the mere

7   *existence* of the stay-put provision and provide suggestions about its relationship to this

8   case.  (SAC ¶¶ 16, 110, 287–88.)

9   In short, the Second Amended Complaint lacks any basis for concluding that the

10   stay-put provision was triggered for any Student Plaintiff.  Before Plaintiffs filed the

11   Second Amended Complaint, the Court set forth its interpretation of § 1415(j) and noted

12   that the First Amended Complaint lacked any basis for concluding that the stay-put

13   provision was triggered.  (Order Lifting Stay 2–3, ECF No. 252.)  The inclusion of the

14   stay-put provision and related allegations do not save this case from dismissal because

15   to the extent any of Plaintiffs' claims are based on the stay-put provision, those claims

16   lack merit as a matter of law.

17   b.   Allegations related to nominal damages do not confer standing.

18   Finally, Plaintiffs argue that their prayer for nominal damages confers standing

19   despite the holdings in *Martinez* and *Brach*.  (Opp'n 13.)  Plaintiffs elaborate on this

20   argument in their Opposition to the Settling Defendants' Motion to Dismiss, engaging

21   primarily with *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021).  (Mem. ISO Opp'n

22   Settling Defs.' Mot. Dismiss 6–8, ECF No. 277-1.)

23   The phrase "nominal damages" appears in the Second Amended Complaint a

24   total of two times.  (SAC ¶ 262 (stating in class allegations that "Plaintiffs only seek

25   nominal damages and prospective injunctive relief at this time."); *id.*, Prayer for Relief

26   ¶ 17 ("Plaintiffs seek nominal damages for the Defendants' unlawful conduct related to

27   Defendants' systemic failures *under the IDEA*.") (emphasis added).)  These allegations

28   make clear that Plaintiffs' request for nominal damages is made pursuant to the IDEA

1    and the IDEA only.  Plaintiffs do not suggest otherwise.  (*See generally* Opp'n; Mem.

2    ISO Opp'n Settling Defs.' Mot. Dismiss.)

3         However, the IDEA does not provide a remedy for either compensatory damages

4    or nominal damages.  *C.O. v. Portland Pub. Schs.*, 679 F.3d 1162, 1167 (9th Cir. 2012).

5    The principal reason is that the IDEA's primary enforcement mechanism is not a private

6    suit for money damages but instead is the controlled flow of funding from the federal

7    government to the states.  *See id.*  Accordingly, to whatever extent Plaintiffs may have

8    standing to pursue nominal damages, the Second Amended Complaint is nevertheless

9    subject to dismissal because nominal damages are not an available remedy.

10        For these reasons, Plaintiffs' lack of standing is a basis on which to appropriately

11   dismiss the Second Amended Complaint without prejudice and without leave to amend.

12   *Simmons*, 2022 WL 7100611 at *6 (dismissing substantially similar claims without

13   prejudice and without leave to amend for lack of jurisdiction).

14   **B.    Rule 12(b)(6)**

15        The Court proceeds to consider whether Plaintiffs' allegations support a plausible

16   claim for relief; if they do not, the Second Amended Complaint is also subject to

17   dismissal pursuant to Rule 12(b)(6).  For two reasons, Plaintiffs' claims do not meet

18   this standard.  First, all claims are subject to dismissal because there was no "change in

19   placement" under the IDEA.  Second, the constitutional claims and the RICO claims

20   are subject to dismissal because of fundamental flaws in the legal theories underlying

21   each claim.

22        *1.    All claims—no "change in placement" under the IDEA.*

23        Inhering throughout the Second Amended Complaint is Plaintiffs' fundamental

24   assumption that the transition, for all students, from in-person to remote learning at the

25   outset of the COVID-19 pandemic constituted a "change in placement" under the IDEA.

26   This change in placement, the argument goes, triggered the IDEA's procedural

27   safeguards, including parents' right to notice of the change in placement and the right

28   to participate in a reconvened IEP meeting following the change in placement.

1    The Court rejects this argument—and the entire Second Amended Complaint
2    therefore fails—under authority of *N.D.*  In *N.D.*, the State of Hawaii, as part of its
3    efforts to stem a fiscal crisis, instituted biweekly "furlough Fridays" in Hawaii's public
4    schools.  600 F.3d at 1108.  "School children, disabled and nondisabled alike, would
5    not attend school on those Fridays."  *Id.*  Disabled student N.D. requested a due process
6    hearing and invoked the IDEA's stay-put provision.  *Id.*  The State did not adjust the
7    furloughs in response to N.D.'s invocation of the stay-put provision and instead moved
8    forward with the furloughs.  *Id.*  N.D. challenged this decision by filing suit in federal
9    court.  *Id.*  The district court denied N.D.'s request for a preliminary injunction, and
10   N.D. appealed.  *Id.* at 1108–09.

11   The Ninth Circuit affirmed the district court's denial of a preliminary injunction,
12   noting that what the case "turn[ed] on . . . is N.D.'s likelihood of success on the merits
13   of his suit."  *Id.* at 1113.  The "heart" of this issue, in turn, was "whether the furloughs
14   are a change in the educational placement of the disabled children such that the stay-
15   put provisions apply."  *Id.*  The Ninth Circuit went on to answer this question in the
16   negative.  The court noted Congress' intent in passing the IDEA was "to prevent the
17   singling out of disabled children and to 'mainstream' them with non-disabled children."
18   *Id.* at 1116.  It elaborated:

19       When Congress enacted the IDEA, Congress did not intend for the IDEA
20       to apply to system wide administrative decisions. Hawaii's furloughs
21       affect all public schools and all students, disabled and non-disabled alike.
         An across the board reduction of school days such as the one here does not
22       conflict with Congress's intent of protecting disabled children from being
23       singled out.  In comparison to cases in which a child is singled out in
         relation to her peers, the furlough days do not remove the plaintiffs from
24       the regular classroom setting anymore than they do the other children.
25       Disabled children are not singled out for furlough days. To the extent
         possible under the new school calendar, the disabled children are still
26       "mainstreamed" with regular children at school.  To allow the stay-put
27       provisions to apply in this instance would be essentially to give the parents
28       of disabled children veto power over a state's decisions regarding the

management of its schools.   The IDEA did not intend to strip
administrative powers away from local school boards and give them to
parents of individual children, and we do not read it as doing so.

*Id.* at 1116–17.

All this reasoning applies in equal measure to the present matter and to the actions Defendants took to close schools to in-person learning at the outset of the COVID-19 pandemic.  The school closures affected all students, disabled and non-disabled alike. Transitioning all students to remote learning in response to a deadly viral outbreak does not conflict with Congress's intent of protecting disabled children from being singled out, nor does it remove disabled children from the regular classroom setting any more than it does other children.  Like the Ninth Circuit, this Court will not read the IDEA as "intend[ing] to strip administrative powers away from local school boards and give them to parents of individual children."  *Id.* at 1117.

The early-pandemic transition to remote learning for all students did not constitute a "change in placement" under the IDEA.  *See Bills*, 605 F. Supp. 3d at 755 (analogizing to *N.D.* and concluding that "here, where Defendants moved all students— regardless of disability—to remote learning, the change was similarly system-wide"). Because there was no "change in placement," there was no violation of any right, statutory or constitutional.  All of Plaintiffs' claims are subject to dismissal without leave to amend on this basis.

### 2.   Constitutional claims

Plaintiff brings two constitutional claims pursuant to 42 U.S.C. § 1983, one for violation of equal protection, and the other for violation of substantive due process. These constitutional claims are both subject to dismissal under Rule 12(b)(6).

The elements of a § 1983 claim include (1) conduct of a person (2) acting under color of state law (3) proximately causing (4) a violation of rights protected by the U.S. Constitution or created by federal statute.  42 U.S.C. § 1983.  In determining if there has been a violation of constitutional rights, the court first determines which level of

constitutional scrutiny to apply, from rational basis scrutiny, which is the least stringent, to strict scrutiny, which is the most stringent). *Hecox v. Little*, 479 F. Supp. 3d 930, 973–74 (D. Idaho 2020). "The level of scrutiny depends on the characteristics of the disadvantaged group or the rights implicated by the classification." *Latta v. Otter*, 19 F. Supp. 3d 1054, 1073 (D. Idaho 2014). The Court then "appl[ies] the appropriate level of scrutiny" to the challenged government action. *Id.*

Here, Plaintiffs' constitutional claims fail because Defendants' actions withstand constitutional scrutiny. The right to an education is not a fundamental right, *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 458 (1988), and disability is not a suspect class, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985). Therefore, the challenged actions in this case do not trigger strict scrutiny; instead, Plaintiffs must show that the failure to provide in-person learning was not rationally related a legitimate government purpose. *Kadrmas*, 487 U.S. at 457–58. Here, preventing the spread of COVID-19 is a legitimate government purpose. *Slidewaters LLC v. Wash. State Dept. of Labor & Indus.*, 4 F. 4th 747, 758 (9th Cir. 2021) ("There is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease."); *cf. Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). Moreover, closing schools is clearly rationally related to curbing the spread of COVID-19. Accordingly, Plaintiffs' constitutional claims fail. Because the failure is based on Plaintiffs' fundamental legal theory and not on the absence of required facts, the constitutional claims are subject to dismissal without leave to amend.

### 3.    *RICO claim—no predicate acts and no RICO standing*

Plaintiffs' RICO claim is also subject to dismissal for separate reasons. A claim for RICO requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 837 (9th Cir. 2014). RICO plaintiffs must also have statutory standing. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267–68 (1992).

Here, Plaintiffs' claims fail on two of these requirements.  First, there are no predicate acts of racketeering.  Plaintiffs allege that Defendants' predicate acts were the fraud they committed in assuring the federal government that, in exchange for IDEA funding, they would not violate the IDEA.  But, as discussed, Plaintiffs' allegations that Defendants violated the IDEA fail because the early-pandemic transition for all students to remote learning did not constitute a "change in placement."  Defendants' representations to the government that they would not violate the IDEA are not fraudulent because, as alleged, Defendants did not in fact violate the IDEA.

Second, Plaintiffs lack RICO (as opposed to Article III) standing.  Judge Norman K. Moon of the Western District of Virginia analyzed this same issue in *Bills*, examining a civil RICO claim substantially the same as the one asserted in this case, by the same attorneys:

> A plaintiff bringing a civil RICO claim must have standing to do so. *Holmes*[, 503 U.S. at 267–68]; 18 U.S.C. § 1964(c). The Fourth Circuit had identified "certain 'standing' requirements before one can attempt to state a claim under 18 U.S.C. § 1962." *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 444 (E.D. Va. 2006) (citing *Brandenburg v. Seidel*, 859 F.2d 1179, 1188 n. 10 (4th Cir. 1988)). Those requirements include that "(1) the plaintiff must have detrimentally relied on the predicate acts of racketeering activity; (2) the predicate acts must be the proximate cause of the injury to the plaintiff; and (3) the plaintiff must suffer actual injury." *Id.*; *see also Brandenburg*, 859 F.2d at 1188–89. Thus, "To have standing, plaintiffs must show that they were the intended targets of the RICO violations." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp 2d 521, 549 (S.D.N.Y. 2002). Plaintiffs must establish "some direct relation between the injury asserted and the injurious conduct alleged," *Holmes*[, 503 U.S. at 268], and that link must not be "too remote," *id.* at 271, 112 S.Ct. 1311.

> Even taking Plaintiffs' allegations as true, including the unwarranted legal allegation that Defendants were actually violating the IDEA, Plaintiffs have, at most, alleged that Defendants committed fraud against the United States—not against Plaintiffs. There is no alleged relationship between the purported predicate acts (the false assertions of compliance with the IDEA)

and the purported injuries suffered by Plaintiffs (the temporary move to remote learning). Thus, Plaintiffs do not have RICO standing.

*Bills*, 605 F. Supp. 3d at 758.  Plaintiffs here lack RICO standing for the very same reasons.

Moreover, this Court joins Judge Moon of the Western District of Virginia and Judge Colleen McMahon of the Southern District of New York in noting that "the RICO claims against the defendant school systems 'reek of bad faith and contrivance.'" *Id.* at 759 (quoting *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 172 (S.D.N.Y. 2020)).  Here, as in *Bills*, the Court warned Plaintiff's counsel at a prior hearing that the RICO claims appeared to lack merit.  Nevertheless, "Plaintiffs' counsel again brought a complaint— with nothing more than conclusory allegations—claiming that defendant school systems, while trying to protect their students from a deadly global pandemic, engaged in racketeering, mail fraud, and wire fraud." *Id.*

For these reasons, it is appropriate to dismiss the RICO claim.  As with the constitutional claims, dismissal is without leave to amend because the RICO claim is fundamentally defective, not merely lacking in sufficient factual material.

**C.    Summary**

To summarize: the entire Second Amended Complaint is subject to dismissal without prejudice and without leave to amend under Rule 12(b)(1) based on mootness. Moreover, the entire Second Amended Complaint is subject to dismissal with prejudice and without leave to amend under Rule 12(b)(6) because there was no "change in placement" under the IDEA.  Moreover, the constitutional and RICO claims are based on fundamentally flawed legal theories.  In light of these holdings, it is appropriate to dismiss the entire Second Amended Complaint with prejudice and without leave to amend.

**D.    Settling Defendants' Motion to Dismiss**

The Settling Defendants have entered into settlement agreements with certain Plaintiffs and separately move to dismiss the claims asserted against them.  (Settling

Defs.' Mot. Dismiss.)  But the Second Amended Complaint is subject to dismissal with prejudice and without leave to amend for the reasons proffered in the Motion filed by all Defendants, discussed above.   Accordingly, the Court denies the Settling Defendants' Motion as moot.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** the individual claims in Plaintiffs' Second Amended Complaint **WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**.  (ECF No. 263.)   Class claims are dismissed **WITHOUT PREJUDICE**.   The Settling Defendants' Motion to Dismiss is **DENIED AS MOOT**.  (ECF No. 272.)  The Court will issue Judgment consistent with this Order.


**IT IS SO ORDERED.**


June 15, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**